**Larry OGLE and Susan Ogle, Plaintiffs,**

v.

**SHELL OIL COMPANY, Defendant.**

**No. 1:94–CV–449.**

United States District Court,
E.D. Texas,
Beaumont Division.

Dec. 14, 1995.

Steven Carl Barkley, Steven C. Barkley, Beaumont, TX, for plaintiffs.

Morris C. Carrington, Mehaffy & Weber, Beaumont, TX, for defendant.

## MEMORANDUM OPINION

COBB, District Judge.

### BACKGROUND

The Plaintiff, Larry Ogle, sustained an injury to the head on May 3, 1993. Mr. Ogle, a Louisiana resident, was employed by Brown & Root as a carpenter helper to work on a project for the Defendant, Shell Oil Company ("Shell"), a resident of Texas. As was their custom, Mr. Ogle and a few of his colleagues were eating lunch underneath a reactor vessel which was located in an area of Shell's Deer Park Plant over which Brown and Root had exclusive control. Both parties refer to this area as a "green belt area." Just prior to the lunch hour, ironworkers had been working up in the pipe rack and reactor vessel area above where Ogle and his coworkers were eating lunch. The ladders being used by the ironworkers were either not tied down or were untied before the lunch break. During lunch, the ladders were blown over by the wind. Another employee yelled "headache," which was meant to notify those below of the falling ladder. When Mr. Ogle heard the warning, he jumped up to get out of the way, but hit his head on a pipe flange located above where he was eating. He sustained injuries to his head, neck, and back.

### ANALYSIS

Shell seeks summary relief from this court by asserting that, as the landowner who hired an independent contractor, Shell has no duty to Mr. Ogle, an employee under the control of Brown and Root. Shell further asserts that, even if it had a duty to Mr. Ogle, Shell's actions or inaction did not proximately cause the accident. Mr. Ogle maintains that while Shell does not generally owe a duty to employees under the control of an independent contractor, Shell possessed and exercised control sufficient to overcome the general rule.

### Summary Judgment

Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the Court establish that there are no genuine issues of material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–88, 106 S.Ct. 1348, 1355–57, 89 L.Ed.2d 538 (1986). When the nonmoving party has the burden of proof on an issue, the movant must state the basis for the motion and identify those portions of the pleadings, depositions, admissions, answers to interrogatories, together with affidavits, that demonstrate the absence of a genuine issue of material fact.[1] *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *Topalian v. Ehrman*, 954 F.2d 1125, 1131–32 (5th Cir.1992), *cert. denied*, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). A mere conclusory statement that the other side has no evidence is not enough to satisfy a movant's burden. *See Celotex*, 477 U.S. at 328, 106 S.Ct. at 2555.

Once the movant has shown the absence of material factual issues, the opposing party has a duty to respond, via affidavits or other means, asserting specific facts demonstrating that there is a genuine issue for trial. Fed. R.Civ.P. 56(e); *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The Court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 456–58, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Matsushita*,

---

1. A "material" fact is one that might affect the outcome of the suit under the applicable substantive law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. In order for a dispute to be "genuine," the evidence before the Court must be such that a reasonable jury could return a verdict for the nonmoving party. *Id., see also, Judwin Properties, Inc. v. United States Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir.1992).

475 U.S. at 587, 106 S.Ct. at 1356. However, a party opposing summary judgment may not rest on mere conclusory allegations or denials in his pleadings. Fed.R.Civ.P. 56(e); *see also Topalian,* 954 F.2d at 1131.

### No Duty

■ An occupier of land has the duty to use reasonable care to keep the premises under his control in safe condition. *Redinger v. Living, Inc.,* 689 S.W.2d 415, 417 (Tex. 1985). A general contractor on a construction site, who is in control of the premises, is charged with the same duty as an occupier. *Id.* The general contractor, like the owner, may be subject to direct liability for negligence arising from either a premises defect or some activity at the site. *Davis v. R. Sanders & Associates Custom Builders, Inc.,* 891 S.W.2d 779, 781 (Tex.App.—Texarkana 1995, no writ). However, an owner or general contractor does NOT have a duty to see that an independent contractor performs work safely. *Id.* It is only when the owner/general contractor retains some right of control over the manner of a subcontractor's work that it may be liable if it fails to exercise reasonable care in supervising the subcontractor's activity. RESTATEMENT (SECOND) OF TORTS § 415 (1965). In order to be liable, the general contractor must retain at least some control over the way the work is done. *Davis,* 891 S.W.2d at 782. It is not enough that the general contractor may dictate the results of the work or has a general right to order the work stopped or resumed, to inspect its progress and receive reports, to make suggestions that need not necessarily be followed, or to prescribe alterations and deviations. *Id.* The general contractor must retain enough right of supervision over the manner of the work that the subcontractor is not entirely free to do the work in his own way. RESTATEMENT (SECOND) OF TORTS § 414 cmt. c (1965). The underlying rationale for the rule is that the subcontractor is in a better position to find and eliminate or to warn its employees about safety hazards. *Shell Chemical Co. v. Lamb,* 493 S.W.2d 742, 748 (Tex.1973). More than a slight degree of control is required. *Exxon Corp. v. Quinn,* 726 S.W.2d 17, 19–20 (Tex.1987); *Wilson v. Goodyear Tire & Rubber Co.,* 753 S.W.2d 442, 446–47 (Tex.App.—Texarkana 1988, writ denied).

■ Under Texas law, there are two ways in which the necessary retention of control is established. First, the contract itself may evidence that the general contractor (or owner) explicitly retained control in the contract with the subcontractor (or contractor). Second, the general contractor (or owner) may actually exercise control over the work of the subcontractor (or contractor). Examples of the first situation include *Pollard v. Missouri Pacific R.R.,* 759 S.W.2d 670, 671 (Tex.1988) (written contract gave employer control over access and storage of materials); *Tovar v. Amarillo Oil Co.,* 692 S.W.2d 469, 470 (Tex. 1985) (written contract gave owner the right to take possession of well and discontinue drilling on the basis of carelessness, inattention or incompetency on the part of the contractor); and *Lawson–Avila Const., Inc. v. Stoutamire,* 791 S.W.2d 584, 589 (Tex.App.—San Antonio 1990, writ denied) (written contract made general contractor responsible for all construction techniques and procedures). Examples of retention of control shown by an actual exercise of control include *Enserch Corp. v. Parker,* 794 S.W.2d 2, 6 (Tex.1990) (employer provided procedure manual for contractor's employees), and *Pena v. TXO Production Corp.,* 828 S.W.2d 188, 190 (Tex. App.—Corpus Christi 1992, no writ) (general contractor's employee gave "step by step" instructions to subcontractor).

■ The summary judgement evidence shows that Shell retained control over safety issues both contractually and actually. While the area in which Mr. Ogle was injured is considered a "green belt area," it is important to point out the different ways in which Shell attempted to control the level of safety on the job. Shell had the right to set the hours Brown and Root employees could work in the Shell plant. (Washburn Depo., p. 18). Shell also had the right to determine the areas within the Deer Park facility that Brown and Root personnel could use. (Id.). Importantly, Shell maintained safety program expectations and audited the work processes and documentation of the Brown and Root workers. (Washburn Depo. at 20). Shell actually reviewed Brown and Root safe-

ty manuals, (Washburn Depo. at 23), and made suggestions to Brown and Root management about the need to correct certain safety procedures. (Washburn Depo. at 24). Shell's contract with Brown and Root granted Shell the right to approve or disapprove any individual designated by Brown and Root to fill the position of safety security manager. (Washburn Depo. at 31; Defendant's Motion for Summary Judgment, Exhibit B, Part 14.1(b)) Safety managers for Shell went into the field and examined the work processes for safety. (Washburn Depo. at 23–24, 29). Shell reserved the right to require Brown and Root to take corrective action in the event that Brown and Root was not following Shell safety procedures. (Washburn Depo. at 32). Shell provided Mr. Ogle with a copy of its safety manual and he was required to take a written test on the manual. (Ogle Deposition, p. 35). Finally, at least three provisions of the contract between Shell and Brown and Root contain safety clauses in which Shell retains control of safety procedures. (Defendant's Motion for Summary Judgment, Exhibit B, Parts 8.0, 16.1, and 18.0).

■ It is clear that Shell had the right to and did control the safety procedures and work methods of Brown and Root employees. The failure to tie down the ladder was the result of failure to follow an OSHA procedure, which Shell required that Brown and Root follow. (Craddock Deposition, p. 10). Because Shell retained control over this aspect of the work site, it was obligated to fulfill its duty in a non-negligent manner. Whether Shell, by failing to provide a safe place to eat lunch or by failing to exercise its control over the worksite, was negligent in fulfilling the responsibilities it reserved and undertook is a question for the jury.

### Proximate Cause

Shell contends that their breach of any duty that might have been owed to the Plaintiff did not proximately cause Mr. Ogle's accident. Shell asserts that the conduct of the Brown and Root workers was an intervening cause of Mr. Ogle's accident and that the necessary causal chain is broken.

■ Proximate cause consists of both cause in fact and forseeability. *Travis v. City*, 830 S.W.2d 94, 98 (Tex.1992); *Cunningham v. U.S.*, 827 F.Supp. 415 (W.D.Tex. 1993). Proximate cause has been defined as a cause which, in a natural and continued sequence, produces an event, without which the event would not have occurred. *Phoenix Refining Co. v. Tips*, 125 Tex. 69, 81 S.W.2d 60, 61 (Comm.App.1935). The test for forseeability is whether the negligent actor should have anticipated the risk to persons, within the range of the actor's duty, growing out of the negligent act or omission. *Saucedo v. Phillips*, 670 F.2d 634, 637 (5th Cir. 1982). Cause in fact means that the defendant's act or omission was a substantial factor in bringing about the injury which would not have otherwise occurred. *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 774–75 (1995).

While the Defendant correctly states that at some point in the causal chain their conduct may be too remotely connected with the Plaintiff's injury to constitute legal causation, Shell has not found that distant point. It is not far-fetched to think that Shell's failure to properly implement and oversee safety procedures was a proximate cause of Mr. Ogle's injury. Certainly a reasonable juror could so conclude. Accordingly, Shell's motion for summary judgment is Denied.