## Robert and Maryanne Gero v. J.W.J. Realty, et al.

[757 A.2d 475]

No. 99-045

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed June 16, 2000

*James M. Dingley,* Burlington, and *Michael Rose,* St. Albans, for Plaintiffs-Appellants.

*Stephen D. Ellis* of *Kiel & Ellis,* Springfield, for Defendant-Appellee J.W.J. Realty.

*Pietro J. Lynn* and *Craig S. Nolan* of *Dinse, Knapp & McAndrew, P.C.,* Burlington, for Defendant-Appellee Wiemann-Lamphere.

**Amestoy, C.J.** Plaintiffs Robert and Maryanne Gero[1] appeal a Chittenden Superior Court order granting defendants J.W.J. Realty and Wiemann-Lamphere judgment as a matter of law. Plaintiff argues that the court erred because (1) he had not completed his case and (2) the evidence he presented and proffered gave rise to a jury question as to defendants' liabilities. We affirm.

At trial, plaintiff presented the following facts. On November 11, 1992, at the construction site of a new Saturn automobile dealership, plaintiff, an employee of Mahl Construction, Inc., slipped and fell on a dirt mound ramp that provided access to Mahl's on-site trailer. Plaintiff claims that he was required to access the trailer to obtain equipment for his job. The dirt mound had uneven slopes, and no hand or guard rail was provided. Moreover, freezing temperatures on the morning of the accident had possibly aggravated the mound's dangerousness and rendered it slippery. Plaintiff allegedly fell and suffered an injury, which has caused him chronic pain ever since. He collected workers' compensation from Mahl for his injury.

Plaintiff brought a tort action in superior court against J.W.J. Realty, the owner of the construction site; Wiemann-Lamphere, an architectural firm hired by J.W.J. to coordinate the construction work; Jeffrey and William Savoie, principals of J.W.J.; and Saturn of Vermont, Inc.[2] Defendants indemnified Mahl. A jury trial com-

---

[1] We hereinafter refer to Robert Gero as plaintiff.

[2] The court granted the Savoies' and Saturn of Vermont's motions for summary judgment prior to trial.

menced, and for three days, plaintiff introduced evidence intended to support his allegation that the dirt mound was unsafe and that defendants J.W.J. and Wiemann-Lamphere knew about the dirt mound, should have recognized its danger, and could have rectified the danger it posed.

With two of plaintiff's witnesses yet to testify, the court engaged in a lengthy discussion with counsel regarding the relevant law and the evidence already presented. The court invited plaintiff's counsel to make an offer of proof with respect to any remaining evidence relevant to liability issues. After plaintiff's proffer, the court concluded that there was no possible way that, given plaintiff's case, it could give any instructions that would allow a reasonable jury to find liability against J.W.J. or Wiemann-Lamphere. Consequently, the court granted defendants' motions for judgment as a matter of law, and plaintiff appealed to this Court.

■ Judgment as a matter of law may be granted where "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the nonmoving] party." V.R.C.P. 50(a)(1); *Brueckner v. Norwich Univ.*, 169 Vt. 118, 122, 730 A.2d 1086, 1090 (1999). We review judgment as a matter of law under the same standard as the trial court: the evidence is viewed in the light most favorable to the nonmoving party, and we exclude the effects of any modifying evidence. See *Brueckner*, 169 Vt. at 122, 730 A.2d at 1090. "If evidence exists that may fairly and reasonably support all elements of the nonmoving party's claim, judgment as a matter of law is improper." *Id.* However, V.R.C.P. 50 authorizes a trial court to enter judgment as a matter of law against a party "at any time before submission of the case to the jury," V.R.C.P. 50(a)(2), if the party's claim cannot be maintained under controlling law. See V.R.C.P. 50(a)(1).

## I.

Plaintiff first argues that the court erred because plaintiff's case had not been fully heard on the issue of liability. Plaintiff contends that had William Savoie, a principal of J.W.J., been allowed to testify, he would have told the jury of his frequent presence at the construction site and of the times he had required that various dirt mounds be removed. This, plaintiff argues, would have bolstered his theory that J.W.J. had possession and control of the construction site and the requisite awareness of the dirt mound's dangerousness to render J.W.J. liable. Plaintiff also claims that a physician would testify to the severity of plaintiff's injury, and to the dirt mound's dangerousness.

 Plaintiff's argument is not persuasive. First, in his proffer, plaintiff made no reference to the physician. Thus, he has waived his argument with regard to this witness, since we will not consider issues not properly raised and preserved below. See *Rubin v. Sterling Enters., Inc.*, 164 Vt. 582, 587, 674 A.2d 782, 785 (1996).

As for the unheard testimony of William Savoie, we note that plaintiff had previously deposed this witness, at which time he denied seeing the dirt mound at issue. Thus, plaintiff's contention that at trial the witness would have bolstered plaintiff's theory that J.W.J. had the requisite awareness of the dirt mound and its dangerousness was, at best, speculative. In any event, the trial court considered plaintiff's proffer that J.W.J. was involved in the decision making and had contractors move other dirt piles in determining whether the testimony would have been sufficient to support plaintiff's theory of liability against either or both defendants.

██ ██ The court determined that the proffered testimony would not alter its conclusion that J.W.J. did not, as a matter of law, owe a legal duty to plaintiff. The existence of a duty is a question of law to be decided by the court. See *Denis Bail Bonds, Inc. v. State*, 159 Vt. 481, 487, 622 A.2d 495, 499 (1993). Therefore, once the court found that no legal duty existed, it was correct to grant defendants' motions, because plaintiff's tort action was without a legal basis. See Reporter's Notes, V.R.C.P. 50 ("'[V.R.C.P. 50] authorizes the court to perform its duty to enter judgment as a matter of law at any time during the trial, as soon as it is apparent that either party is unable to carry a burden of proof that is essential to that party's case.'") (quoting Fed. R. Civ. P. 50 Advisory Committee's Note); *Baisley v. Missisquoi Cemetery Ass'n*, 167 Vt. 473, 477, 708 A.2d 924, 926 (1998) ("To prove negligence, plaintiffs must show a duty of care on the part of defendants, failure to perform that duty, and injury resulting from the breach of that duty.").

## II.

At issue, then, is plaintiff's second argument that the court erred in holding that defendants owed plaintiff no duty regarding the alleged dangerousness of the dirt mound ramp. Duty "is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." W. Keeton, et al., Prosser and Keeton on Torts § 53, at 358 (5th ed. 1984). Plaintiff's legal theory is based upon § 343 of the Restatement of Torts:

Dangerous Conditions Known to or Discoverable by Possessor

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343 (1965). Plaintiff argues that both the landowner, J.W.J., and its construction manager, Wiemann-Lamphere, knew about the dirt mound, should have recognized its danger, and could have rectified it, and that their failure to do so renders both liable. Plaintiff argues that J.W.J. is a "possessor of land" under § 343, and that Wiemann-Lamphere, because it acted on J.W.J.'s behalf in coordinating the project, was similarly liable under § 383 of the Restatement of Torts.[3]

## A. J.W.J.

The essence of plaintiff's theory of liability pursuant to Restatement § 343 is that plaintiff "was injured on account of a condition on the land, a dirt mound over which J.W.J. could exercise control." Defendants, however, contend that the dirt mound was not a condition of the land, but rather a "construction means or method" created by plaintiff's employer, Mahl, to facilitate its work.[4] We agree with defendants.

---

[3] Section 383 provides:

> One who does an act or carries on an activity upon land on behalf of the possessor is subject to the same liability, and enjoys the same freedom from liability, for physical harm caused thereby to others upon and outside of the land as though he were the possessor of the land.

[4] We note that the contract between owner J.W.J., construction manager and architect Wiemann-Lamphere, and contractor Mahl Construction, imposes responsibility for the actual performance of the work solely upon Mahl. In Article 2.3.5, the contract states that Wiemann-Lamphere, J.W.J.'s representative during the construction phase of the project, see Article 2.3.2, has no "responsib[ility] for or . . . control or charge of construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work." Nor, this article continues, do J.W.J. or Wiemann-Lamphere hold any "responsib[ility] for or have control over the

The trial court concluded that plaintiff could not, as a matter of law, establish that the dirt mound was "a condition on the land" under § 343. On appeal, plaintiff contends that the court erred because the mound's dirt was a "part of the land — even though the result of an artificial alteration of the land's topography." Plaintiff cites *Lombardi v. Stout*, 604 N.E.2d 117 (N.Y. 1992), to support his argument, but we agree with defendants' assessment that *Lombardi* supports rather than discredits the trial court's analysis. In *Lombardi*, the plaintiff, an employee of a general contractor, was injured when an inattentive co-worker failed to hold a rope with the result that the tree branch the plaintiff was cutting swung out and struck the ladder on which the worker was standing. The plaintiff sued the landowner, contending that his injuries had been caused by a dangerous condition on the land and not by the co-worker's negligence. The New York Court of Appeals rejected this contention, stating:

> It is settled law that where the alleged defect or dangerous condition arises from the contractor's methods and the owner exercises no supervisory control over the operation, no liability attaches to the owner under the common law . . . .

*Id.* at 119. From this, plaintiff argues that the owner would have been liable had the injury been caused by a dangerous condition of the premises over which the owner had control. See *Ross v. Curtis-Palmer Hydro-Electric Co.*, 618 N.E.2d 82, 88 (N.Y. 1993); *Ogle v. Shell Oil Co.*, 913 F. Supp. 490, 493 (E.D. Tex. 1995).

---

acts or omissions of the Contractor." Article 4.3.1 states that the contractor shall be "solely responsible for all construction means, methods, techniques, sequences and procedures." Article 10.1.1 states that the contractor "shall be responsible for initiating, maintaining, and supervising all safety precautions and programs in connection with the Work." Article 10.2.1 continues this by requiring the contractor to "take all reasonable precautions for the safety of, and [to] provide all reasonable protection to prevent damage, injury or loss to . . . all employees on the Work and all other persons who may be affected thereafter."

It is thus clear that the plain, explicit language of the contract assigns responsibility for and control over the means and methods of construction to Mahl, including safety issues that flow from those means and methods. See *Ross v. Curtis-Palmer Hydro-Electric Co.*, 618 N.E.2d 82, 88-89 (N.Y. 1993) (concluding that contract between landowner and general contractor is potential evidence of actual control general contractor exercises over subcontractor's construction methods and safety of subcontractor's employees); *Ogle v. Shell Oil Co.*, 913 F. Supp. 490, 493 (E.D. Tex. 1995) (same); *Nicholson v. Turner/Cargile*, 669 N.E.2d 529, 533-34 (Ohio Ct. App. 1995) (no contractual duty for general contractor or subcontractor to advise contractor of hazardous construction procedures or make work site safe).

We fail to see the relevance of the fact that the mound was composed of dirt from J.W.J.'s property to an analysis of the applicability of § 343. Here, the record contains ample evidence establishing that Mahl constructed the mound itself and decided, of its own accord, to use the dirt mound ramp to access its trailer. There is no evidence to indicate, nor does plaintiff argue, that J.W.J. exercised any supervisory control or input over any part of the ramp's construction. See *Lombardi*, 604 N.E.2d at 119 ("[T]here is no evidence that defendant [landowner] exercised supervisory control or had any input into how the branch was to be removed.").

Nor is this a situation where the landowner has altered the natural condition of the premises to create liability for damages resulting from any negligence. See W. Keeton, *supra*, § 57, at 390-91. The dirt mound ramp can be analogized to a wooden staircase that alternatively might have provided access to Mahl's trailer. In fact, plaintiff testified that Mahl had used wooden stairs on this same trailer on another job. Moreover, plaintiff testified that at some point Mahl used wooden stairs to provide access to its trailer on the Saturn project in question, but that Mahl had plaintiff remove the stairs so it could move the trailer. Clearly, such a staircase would not fall under § 343's definition of "a condition on the land," even if the boards used to construct the staircase were made from trees felled on J.W.J.'s land. See *Lombardi*, 604 N.E.2d at 119 ("Plaintiff's account of the accident establishes that there was no dangerous condition on the premises which caused the accident, but rather that it was caused by the manner in which removal of the branch was undertaken."). The dirt mound was merely a means or method chosen exclusively by Mahl to access its trailer, not "a condition on the land" under the meaning of § 343.

■ Plaintiff's evidence and proffered testimony were insufficient as a matter of law to prove his theory of liability. See *Green v. Unity School of Christianity*, 991 S.W.2d 201, 205 (Mo. Ct. App. 1999) ("Since Appellants cannot prove that there was a condition on the land that caused the harm to the decedents, there can be no liability under § 343."). V.R.C.P. 50 authorizes judgment as a matter of law when "'it is apparent that either party is unable to carry a burden of proof that is essential to that party's case.'" Reporter's Notes, V.R.C.P. 50 (quoting Fed. R. Civ. P. 50 Advisory Committee's Note). We therefore affirm the superior court's grant of judgment as a matter of law.

## B. Wiemann-Lamphere

 Plaintiff similarly argues that Wiemann-Lamphere owed plaintiff a duty under § 343, since it acted as J.W.J.'s representative in coordinating the construction project. However, our decision regarding plaintiff's claim against J.W.J. also disposes of his claim against the construction manager and architect, since plaintiff's liability theory for Wiemann-Lamphere ultimately rests on § 343's applicability to J.W.J.

*Affirmed.*