2005 VT 35

**MAINE MUTUAL FIRE INSURANCE COMPANY v. Robert TINKER and John Charles Fedor**

[872 A.2d 360]

No. 03-562

¶ 1. March 16, 2005. Maine Mutual Fire Insurance Company appeals from a superior court order concluding that it has an affirmative duty to provide counsel and liability coverage to Robert Tinker in a suit arising from his actions as a professional surveyor. Maine Mutual contends that the court erred in refusing to decide the coverage issues as a matter of law, and, alternatively, in failing to submit several issues to the jury. We conclude that, as a matter of law, the business liability policy excludes coverage for damages arising from Tinker's professional services, and therefore we reverse the superior court's order denying judgment as a matter of law in favor of Maine Mutual. Given this disposition, we do not reach the questions regarding the issues submitted to the jury.

¶ 2. In late 1999, Wayne and Timothy Kenney retained Tinker to survey a boundary line on property they were considering buying from Laurence and Barbara Schuvert. The Kenneys were particularly interested in resolving the ownership of a 19.9 acre parcel that the Schuverts' neighbor, John Fedor, claimed title to through adverse possession. Tinker concluded that the parcel in fact belonged to the Schuverts, and he then went on to the property and cut trees and altered the existing boundary markers. In April of 2001, Fedor filed suit against Tinker, the Kenneys, and others alleging that Tinker's actions damaged Fedor's property and called his title into question.

¶ 3. Tinker asked Maine Mutual to defend and indemnify him pursuant to a business owner's liability policy he purchased from an agent in Vermont. Maine Mutual provided an initial defense, but immediately sought a declaratory judgment absolving it of the duty to defend and indemnify. Tinker sought a jury trial on the issue, and the superior court set a trial date in September 2003. On the morning of trial, Maine Mutual moved the court for judgment as a matter of law based on a clause in Tinker's policy excluding coverage for "'[b]odily injury,' 'property damage,' 'personal injury' or 'advertising injury' due to *rendering or fail[ing] to render any professional service.*" (Emphasis added.) In support of its motion, Maine Mutual presented Tinker's deposition testimony, in which he conceded that he undertook all of his actions on the disputed property in the course of rendering professional services. Nonetheless, the court rejected Maine Mutual's arguments and submitted the case to the jury for a determination of the parties' reasonable coverage expectations at the time the parties entered into the insurance contract.

¶ 4. At trial, Tinker testified that he had previously held a malpractice insurance policy, but had stopped renewing it on the belief that he was largely judgment proof because he and his wife jointly own the major business assets. Tinker explained, however, that he then purchased the Maine Mutual policy on the understanding that it would cover him for damages he might unintentionally inflict on third parties. He expressed the belief that, while his malpractice insurance had protected him in the event of a dispute with a paying client, his cur-

rent business liability policy covered suits such as that brought by Fedor.

¶ 5. At the close of evidence, the court indicated that it would submit only the question of the parties' reasonable coverage expectations to the jury. Maine Mutual then moved the court to present several additional questions to the jury, including whether Tinker's actions were an "occurrence" within the policy definition, and whether Tinker intentionally damaged the property, thereby precluding coverage. The court found that Maine Mutual had not presented evidence on these additional issues, and asked the jury to decide only whether Tinker's "expectation of coverage [was] reasonable under these circumstances." The jury answered in the affirmative, and the court entered judgment for Tinker. This appeal followed.

¶ 6. We construe a provision of an insurance contract according to its terms to determine the parties' intent. See *Hous. Vt. v. Goldsmith & Morris*, 165 Vt. 428, 430, 685 A.2d 1086, 1088 (1996) (interpreting basic contractual provisions as a matter of law). If we find the terms ambiguous, we may admit direct evidence of the parties' intentions at the time of formation. We do not find the exclusionary language at issue in this case ambiguous, however, and therefore we review the language of the contract de novo "from the perspective of what a reasonably prudent person applying for insurance would have understood it to mean." *Towns v. Vt. Mut. Ins. Co.*, 169 Vt. 545, 546, 726 A.2d 65, 67 (1999) (mem.). Judgment as a matter of law is proper when "'there is no legally sufficient evidentiary basis for a reasonable jury to find for [the nonmoving] party.'" *Gero v. J.W.J. Realty*, 171 Vt. 57, 59, 757 A.2d 475, 476 (2000) (quoting V.R.C.P. 50(a)(1)). Given Tinker's deposition testimony, which the trial court had available to it when deciding Maine Mutual's pretrial motion for judgment as a matter of law, we cannot agree that sufficient evidence existed to submit this case to a jury.

¶ 7. In that deposition, Tinker engaged in the following colloquy:

Q: Did you do anything on or about the [disputed property] other than in the course of your professional survey services that you were rendering to Mr. Kenney?

A: Could you repeat that?

Q: Sure. The survey work that you were doing here was as part of your rendering professional survey services to Mr. Kenney, correct?

A: Yes, correct.

Q: Did you do anything to [the property] other than in the course of the services you were providing to Mr. Kenney?

A: No, not that I'm aware of.

Tinker's answers make it clear that the damages at issue in this case arose from his actions as a professional surveyor. The Maine Mutual policy plainly excludes coverage for damages that results from "rendering or fail[ing] to render any professional service," and therefore Tinker could not reasonably have expected coverage under these circumstances.

¶ 8. Tinker argues, however, that he expected the policy to cover him for damages he might inflict on a third party, and that he understood the exclusion as precluding only coverage for damages he might cause to his paying clients. He further contends that our interpretation of the exclusionary language "would negate *all* coverage under a business liability policy when the insured business

consisted solely of the rendering of professional services." Tinker's understanding is not a reasonable one, however, because the exclusionary language draws no distinction between damages caused to paying clients and those done to third parties. Rather, the policy clearly distinguishes between damages that arise from the rendering of professional services, and those arising from other occurrences. Contrary to Tinker's contentions, this language does not exclude coverage for any and all damages he or his employees might cause — for example, it would presumably cover damages arising from a slip and fall on business property — but it does not cover damages that result from his professional judgments and actions as a surveyor.

¶ 9. Tinker further relies on our decision in *Concord General Mutual Insurance Co. v. Woods* to suggest that we should give great weight to his coverage expectations and strictly construe the exclusion in his favor. 2003 VT 33, ¶ 13, 175 Vt. 212, 824 A.2d 572. In particular, Tinker calls attention to the following language: "The *reasonable expectations* of the parties are important in considering the scope of coverage provided in insurance contracts because such contracts, largely adhesive in nature, often contain boilerplate terms that are not bargained for, not read, and not understood by the insureds." *Id.* (quotations omitted) (emphasis added). This language only underscores the point, however, that the insured's coverage expectations must be *reasonable*, otherwise a willfully ignorant policy holder might claim coverage for all manner of explicitly excluded damages. Here, Tinker was well aware of the coverage that professional liability insurance could provide, and he chose to drop that coverage in the belief that he was judgment proof. It is unreasonable to then expect a business liability policy — adhesive or not — to provide coverage for damages arising

from actions he undertook based on judgments he made as a professional surveyor when the policy explicitly excludes coverage for professional services. *Concord General,* therefore, lends nothing to Tinker's cause.

¶ 10. A trial court may grant judgment as a matter of law "at any time before submission of the case to the jury, if the [nonmoving] party's claim cannot be maintained under controlling law." *Gero,* 171 Vt. at 59, 757 A.2d at 476 (quotations and citations omitted); accord V.R.C.P. 50(a). Here, Tinker does not dispute that the damages for which he seeks coverage arose from his rendering of professional services, and his policy clearly and unambiguously excludes coverage under these circumstances. It was unreasonable, therefore, for him to expect coverage in this case. Accordingly, there is no legal basis for his claims, and the trial court should have entered judgment as a matter of law in favor of Maine Mutual. Given our disposition of this issue, we do not reach the other arguments raised on appeal.

*Reversed.*