#27798-r-JMK
**2017 S.D. 72**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

WESTERN NATIONAL MUTUAL
INSURANCE COMPANY,                                    Plaintiff and Appellant,

v.

TSP, INC.,                                                          Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
LINCOLN COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE BRADLEY G. ZELL
Judge

\* \* \* \*

DOUGLAS M. DEIBERT of
Cadwell, Sanford, Deibert
 & Garry, LLP
Sioux Falls, South Dakota

JAMES T. MARTIN of
Gislason, Martin, Varpness
 & Janes, PA
Minneapolis, Minnesota                                   Attorneys for plaintiff
                                                                          and appellant.

MICHAEL L. LUCE
DANA VAN BEEK PALMER of
Lynn, Jackson, Shultz & Lebrun, PC
Sioux Falls, South Dakota                                Attorneys for defendant and
                                                                          appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON NOVEMBER 7, 2016
OPINION FILED **11/08/17**

#27798

KERN, Justice

[¶1.]     Western National Mutual Insurance Co. (Western National) insured BHI Inc. under a commercial general liability (CGL) policy. In 2005, Regency Plymouth Ventures Ltd. (Regency) hired BHI to serve as a general contractor to build four condominiums near Alexandria, Minnesota. TSP Inc. was the project architect. BHI hired LandTeam Surveying Co. (LandTeam) to do the project's land surveying. LandTeam made a surveying error, and two of the condos were located too close to the property line and did not comply with county setback requirements. In order to compensate for the error, BHI and TSP agreed to provide the funds for Regency to purchase a buffer strip of land to complete the project. Although TSP and BHI agreed to share the expense, TSP paid Regency the entire amount. Accordingly, TSP sued BHI for damages arising from LandTeam's error. BHI forwarded the suit to Western National for defense, which it refused to provide. After several years, BHI and TSP settled the case, agreeing that TSP could pursue any potential remedy against Western National that BHI might have under the CGL policy. Western National brought a declaratory judgment action against TSP, seeking a judgment that its CGL policy did not provide coverage for TSP's claims. The parties filed cross-motions for summary judgment. The circuit court granted summary judgment for TSP. Additionally, the court awarded TSP attorneys' fees and costs pursuant to SDCL 58-12-13 and SDCL 58-33-46.1. Western National appeals. We reverse and remand for entry of summary judgment in favor of Western National and for further hearing on the award of attorneys' fees.

-1-

## Facts and Procedural History

[¶2.]        Regency hired BHI to serve as general contractor for a construction project at Regency's Arrowwood Resort near Alexandria, Minnesota.  The project involved building four separate condos, each containing four units.  TSP was the project architect.  The construction contract required BHI to hire a "legally qualified" land surveyor experienced in providing land-surveying services and using accepted surveying practices.  BHI hired LandTeam to do the surveying work.

[¶3.]        The project proceeded in stages.  BHI completed the first two condos before LandTeam began survey work for the last two.  After the last two condos were finished in the spring of 2006, the parties learned that they were built too close to the adjoining property because LandTeam committed a surveying error.  A county zoning ordinance required a fifty-foot side-yard setback (setback provision) with which the two condos did not comply.  Accordingly, the county refused to issue occupancy permits for the condos.

[¶4.]        Regency demanded the mistake be corrected as it was losing revenue because it could not rent the condo units without the occupancy permits.  BHI had three options: it could seek a variance with local zoning authorities, which it did only to have its request denied; tear down the condos and start construction in a new location; or purchase a strip of adjoining property from the neighboring landowner to satisfy the setback provision.  Regency's and BHI's agreed-upon remedy was the third: Regency would purchase a strip of land from Blue Lakes Land Co. for the sum of $302,208.50.  BHI and TSP decided to fund Regency's purchase with BHI agreeing to pay as its share $96,774.19.  However, only TSP or

its insurer provided the funds for the purchase. Regency bought the necessary buffer strip in September 2006. BHI never reimbursed TSP for its agreed-upon portion of the loss.

[¶5.] Western National insured BHI for several years under a CGL policy renewable each year beginning on March 31, 2004. In July 2006, BHI filed a Notice of Occurrence/Claim with Western National as a result of the surveying mistake and resulting property purchase to resolve the error. BHI identified the date of the occurrence as September 15, 2005. The parties agree that the CGL policy that commenced on March 31, 2005, is the relevant insurance contract in this dispute. Western National failed to respond to BHI's notice for almost two years.

[¶6.] On May 1, 2008, TSP sued BHI for contribution, common law indemnity, contractual indemnity, and breach of a settlement agreement and sought to recover the sum paid to Regency. BHI forwarded the complaint to Western National. Within a week, Claims Adjuster Gary Zylstra informed BHI that TSP's claims were outside the scope of coverage. Zylstra explained his decision in a detailed letter, citing the lack of property damage from an occurrence and several policy exclusions. As Western National believed there was no coverage under the policy, it refused to provide BHI with a defense to TSP's suit. On January 14, 2009, BHI's attorney sent a letter to Western National, refuting its denial of coverage and citing two cases as support. Nearly six months later, BHI's attorney still had not heard back from Western National and sent a reminder letter on July 9, 2009. Western National still refused to provide coverage or a defense.

[¶7.]    No pleadings were filed in the suit for several years, and BHI did not answer TSP's complaint.  In April 2011, the parties resolved their dispute by entering into a *Miller–Shugart* settlement agreement.[1]  Under the terms of the agreement, BHI accepted full responsibility for LandTeam's surveying error and agreed to entry of judgment against it in the amount of $279,208.50.  BHI agreed to assign its rights against Western National to TSP.  On April 12, 2011, Western National received notice of this agreement.  On September 28, 2011, Western National sued TSP, seeking a declaratory judgment as to whether its policy provided coverage for TSP's claims against BHI and whether BHI's confession of judgment is valid and binding on Western National.  TSP answered and filed a motion for summary judgment asserting BHI's right to coverage under the policy.

[¶8.]    On March 3, 2015, the circuit court held a hearing on cross-motions for summary judgment regarding the coverage dispute.  On May 27, 2015, the circuit court issued a memorandum decision granting TSP's motion for summary judgment.  The court ruled that the costs arising from the surveying error were covered by the policy, that none of the exclusions barred coverage, and that the *Miller–Shugart* settlement agreement was valid.  On October 19, 2015, the circuit court held a second hearing on the issue of attorneys' fees and awarded TSP

---

1.    A *Miller–Shugart* settlement permits an insured to settle a claim against it by admitting to a judgment and then assigning its rights under its insurance policy to its judgment creditor.  The settlement, however, is not binding on the insurer unless the claim was actually covered and the amount of the settlement is reasonable and not the product of fraud or collusion.  *See Miller v. Shugart*, 316 N.W.2d 729, 734-35 (Minn. 1982); Jerome Abrams, *Failure to Allocate?  Nobody Pays: Using* Miller Shugart *Settlements in Cases of Questionable Insurance Coverage*, 4 Wm. Mitchell J.L. & Prac. 2, 5-6 (2010).

$19,800.18 in attorneys' fees and costs pursuant to SDCL 58-12-3 and SDCL 58-33-46.1. The court found that the delays caused by Western National in handling BHI's claim violated the Unfair Claims Practices Act and were without reasonable cause. On February 12, 2016, the court issued findings of fact and conclusions of law and a final combined judgment against Western National in the sum of $299,008.68.

[¶9.] Western National appeals, alleging there is no coverage under the policy for the surveying error because there was no *property damage* caused by an *occurrence*. In Western National's view, this is because "[d]efective work which causes damage only to the insured's work product itself is not an 'occurrence.'" Additionally, Western National contends there was no damage to property as a result of the surveying error because the finished structures never impinged upon a third party's property. Even if the policy covers the error, Western National submits that coverage is precluded by the "work-in-progress," "faulty workmanship," and "professional services" exclusions. Western National further disputes the validity of the *Miller–Shugart* agreement and the award of attorneys' fees to TSP. Because we find the "professional services" exclusion applies to defeat coverage, we need not address the threshold question of whether the surveying error resulted in property damage caused by an *occurrence* or the remaining issues raised by the parties with the exception of the issue of attorneys' fees. *See Swenson v. Auto Owners Ins. Co.*, 2013 S.D. 38, ¶ 32, 831 N.W.2d 402, 412.

## Standard of Review

[¶10.] "We review a court's denial of a motion for summary judgment under the de novo standard of review." *N. Star Mut. Ins. v. Korzan*, 2015 S.D. 97, ¶ 12, 873 N.W.2d 57, 61. "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting SDCL 15-6-56(c)).

[¶11.] "The interpretation of an insurance policy is a question of law, reviewed de novo." *Swenson*, 2013 S.D. 38, ¶ 13, 831 N.W.2d at 407. "The existence of the rights and obligations of parties to an insurance contract are determined by the language of the contract, which must be construed according to the plain meaning of its terms." *Id.* "When an insurer seeks to invoke a policy exclusion as a means of avoiding coverage, the insurer has the burden of proving that the exclusion applies." *Ass Kickin Ranch, LLC v. N. Star Mut. Ins. Co.*, 2012 S.D. 73, ¶ 9, 822 N.W.2d 724, 727.

## Analysis

1. *Whether the Designated Professional Services endorsement excludes coverage for property damage caused by LandTeam's land-surveying error.*

[¶12.] Western National argues the circuit court erred by holding the Designated Professional Services endorsement to the CGL policy did not exclude coverage for the alleged property damage caused by LandTeam's land-surveying error. The circuit court stated in its May 28, 2015 decision that the endorsement did not bar coverage because "[t]he professional services were performed by a non-

employee subcontractor. The policy does not exclude coverage for work performed on behalf of the insured by a professional subcontractor."

[¶13.] The one-page endorsement is captioned "Exclusion—Designated Professional Services" and states:

> This insurance does not apply to "bodily injury", "property damage" or "personal advertising injury" due to the rendering of or failure to render any professional service.

The endorsement also provides a schedule to list specific professional services. It also notes that if left blank, the information required to complete the endorsement will be shown in the declarations. No entry appears on the schedule, but the declarations page lists "all services" under the exclusion. Western National contends that land surveying is a *professional service* and the use of *any* includes professional services rendered by LandTeam. In response, TSP claims that Western National's interpretation of the endorsement is so broad that it "would seem to cover virtually everyone working for BHI." Further, TSP asserts that the endorsement is inapplicable to work done by subcontractors, relying on *State Farm & Casualty Company v. Lorrick Pacific, LLC*, an opinion from the United States District Court for the District of Oregon. No. 03:110-CV-834-HZ, 2012 WL 1432603 at *5-6 (D. Or. Apr. 24, 2012).

[¶14.] This issue requires us to interpret the meanings of *professional service* and *any* in the endorsement. The CGL policy does not define *professional service*, but we have previously defined the term in CGL policies to mean those acts or services "entailing the performance of a vocation, calling, or occupation requiring learning and intellectual skill." *St. Paul Fire & Marine Ins. Co. v. Engelmann*,

2002 S.D. 8, ¶ 8, 639 N.W.2d 192, 197. Further, "[w]e may use statutes and dictionary definitions to determine the plain and ordinary meaning of undefined words" in a contract. *Jackson v. Canyon Place Homeowner's Ass'n, Inc.*, 2007 S.D. 37, ¶ 11, 731 N.W.2d 210, 213. SDCL chapter 36-18A includes land surveying amongst its listing of *technical professions*, and SDCL 36-18A-4 defines the practice of *land surveying* as the:

> practice or offering to practice *professional services* such as consultation, investigation, testimony evaluation, land-use studies, planning, mapping, assembling, interpreting reliable scientific measurements and information relative to the location, size, shape, or physical features of the earth, improvements on the earth, the space above the earth, or any part of the earth, and *utilization and development of these facts and interpretation into an orderly survey map, plan, report, description, or project*.

> The practice of land surveying includes any of the following:
> (1) *Locates*, relocates, *establishes*, reestablishes, lays out, or retraces any *property line or boundary* of any tract of land or any road, right-of-way, easement, alignment, or elevation of any of the fixed works embraced within the practice of land surveying[.]

(Emphasis added). The Legislature has clearly identified land surveying as a professional service. Further, the nature of land surveying as a vocation requiring specialized knowledge and the application of intellectual skill support the inclusion of land surveying as a *professional service* under the endorsement. *See also* Minn. Stat. § 326.02 (imposing licensing requirements on persons engaged in a variety of professions including land surveying).

[¶15.] TSP's argument that including land surveying as a *professional service* gives an overbroad meaning to the endorsement is unpersuasive. It may be true that the professional services endorsement "should not apply to construction work

performed by contractors[.]" Scott C. Turner, *Insurance Coverage of Construction Disputes* § 39:3 (2d ed.), Westlaw (database updated June 2017). However, "[t]his distinction for contractors is part of the larger distinction between professional services which require specialized knowledge or training and involve the exercise of judgment and those services involved in the execution of a decision based on non-professional judgment." *Id.* Land surveying requires intellectual assessments and the use of professional judgment in comparison to a general construction task like putting up a wall, which involves manually implementing an existing plan. Including land surveying as a *professional service* will not give this endorsement improper breadth. *See Maine Mut. Fire Ins. Co. v. Tinker*, 872 A.2d 360, 362 (Vt. 2005) (holding the phrase "rendering or failing to render any professional service" unambiguously includes land surveying in a CGL policy exclusion).

[¶16.] We next address the scope of the word *any* in the endorsement. "In construing the provisions of an insurance contract, we do not seek strained interpretations." *W. Nat'l Mut. Ins. Co. v. Decker*, 2010 S.D. 93, ¶ 11, 791 N.W.2d 799, 802. The endorsement provides that "[t]his insurance does not apply to . . . 'property damage' . . . due to the rendering of or failure to render *any* professional service." (Emphasis added). Importantly, the endorsement does not limit its scope to the professional services of the insured. The property damage at issue was caused by LandTeam's rendering of a professional service. The fact that LandTeam was a subcontractor is immaterial to the endorsement. Further, the case TSP cites in support of its argument—holding that the endorsement does not apply to services provided by subcontractors—is inapposite. *See Lorrick Pac.,* 2012 WL 1432603, at

*5-6. In *Lorrick Pacific*, the court held that the term *professional services* was ambiguous and "construe[d] the term as not including managing, coordinating, and overseeing the work of subcontractors." *Id.* at *6. The *Lorrick Pacific* court did not find the word *any* to be ambiguous. Nor do we. The endorsement is broadly written, and we will give effect to its plain meaning. *Swenson*, 2013 S.D. 38, ¶ 13, 831 N.W.2d at 407.

[¶17.] Because any alleged property damage in this case was caused by a professional service, the Designated Professional Services endorsement excludes coverage. Western National has met its burden to show TSP's claims arising from LandTeam's land-surveying error are excluded by the endorsement.

> 2. *Whether the circuit court erred in awarding attorneys' fees to TSP.*

[¶18.] The circuit court held a hearing on attorneys' fees on October 19, 2015, and awarded TSP $19,800.18 as detailed in its findings of fact and conclusions of law, pursuant to SDCL 58-12-3[2] and SDCL 58-33-46.1.[3] The court awarded

---

2. SDCL 58-12-3 provides:

> In all actions or proceedings hereafter commenced against any employer who is self-insured, or insurance company, including any reciprocal or interinsurance exchange, on any policy or certificate of any type or kind of insurance, if it appears from the evidence that such company or exchange has refused to pay the full amount of such loss, and that such refusal is vexatious or without reasonable cause, the Department of Labor and Regulation, the trial court and the appellate court, shall, if judgment or an award is rendered for plaintiff, allow the plaintiff a reasonable sum as an attorney's fee to be recovered and collected as a part of the costs, provided, however, that when a tender is made by such insurance company, exchange or self-insurer before the commencement of the action or proceeding in which judgment or an award is rendered and the

(. . . continued)

attorneys' fees under SDCL 58-12-3 because it found that "[t]he denial of coverage . . . by [Western National] . . . [was] without reasonable cause." The court also awarded attorneys' fees under SDCL 58-33-46.1, finding that Western National violated the Unfair Claims Practices Act, specifically SDCL 58-33-67(1),[4] on two occasions by not responding to BHI's communications within thirty days as required. The first violation occurred after Western National ignored BHI's July 13, 2006 notice of claim for "some 22 months."

_____

(continued . . .)

> amount recovered is not in excess of such tender, no such costs shall be allowed. The allowance of attorney fees hereunder shall not be construed to bar any other remedy, whether in tort or contract, that an insured may have against the same insurance company or self-insurer arising out of its refusal to pay such loss.

3.    SDCL 58-33-46.1 provides:

> Any person who claims to have been damaged by any act or practice declared to be unlawful by this chapter shall be permitted to bring a civil action for the recovery of all actual and consequential damages suffered as a result of such act or practice including reasonable attorneys' fees to be set by the court.

4.    SDCL 58-33-67(1) provides:

> In dealing with the insured or representative of the insured, unfair or deceptive acts or practices in the business of insurance include, but are not limited to, the following:
>
> > (1)    Failing to acknowledge and act within thirty days upon communications with respect to claims arising under insurance policies and to adopt and adhere to reasonable standards for the prompt investigation of such claims[.]

[¶19.] In its brief to this Court, Western National admits this violation of SDCL 58-33-67(1).[5] The second violation occurred after Western National failed to respond to BHI's claim for insurance coverage after TSP initiated its suit against BHI. BHI's attorney sent a letter to Western National dated January 14, 2009, seeking insurance coverage. Approximately six months later, BHI's attorney still had not heard back from Western National, and BHI sent a reminder on July 9, 2009.

[¶20.] Western National, however, argues that the circuit court erred in awarding attorneys' fees under either statute. Initially, Western National claims that SDCL 58-12-3 cannot be a basis for an award because the attorneys' fees were granted as part of a ruling on cross-motions for summary judgment and before a hearing on whether attorneys' fees were warranted. Further, Western National argues someone other than the insured cannot be awarded fees under the statute. TSP disputes Western National's contentions, claiming that the court held a later hearing on attorneys' fees after it decided the motions for summary judgment. Further, TSP argues the circuit court was correct to determine that TSP was a proper assignee of BHI's insurance contract rights against Western National. As such, it could collect under any statute authorizing attorneys' fees.

---

5. Western National conceded:

    There is no doubt that Western National violated its own claims handling procedures and requirements under South Dakota law that an insurer respond to a claim within 30 days. SDCL 58-33-67(1). There is no excuse for the fact that there was no follow-up after the July 13, 2006 Notice of Claim for some 20 months.

[¶21.]	"Attorney fees may only be awarded by contract or when specifically authorized by statute." *Biegler v. Am. Family Mut. Ins. Co.*, 2001 S.D. 13, ¶ 56, 621 N.W.2d 592, 606. "The party requesting an award of attorneys' fees has the burden to show its basis by a preponderance of the evidence." *Arrowhead Ridge I, LLC v. Cold Stone Creamery Inc.*, 2011 S.D. 38, ¶ 25, 800 N.W.2d 730, 737.

[¶22.]	Regardless of the parties' various arguments, SDCL 58-12-3 cannot be the basis for an award of attorneys' fees to TSP. SDCL 58-12-3 permits a court to award attorneys' fees in an action against an insurance company for the denial of coverage without reasonable cause but only "if judgment or an award is rendered for plaintiff." TSP is not entitled to judgment or an award against Western National for the denial of coverage and is therefore not entitled to an award of fees under this provision. Because we reverse the grant of summary judgment in favor of TSP, we vacate any fees awarded under SDCL 58-12-3.

[¶23.]	Regarding the second statutory ground for attorneys' fees, Western National argues that although it violated SDCL 58-33-67(1), "the South Dakota statute, on its face, indicates that its violation does not supply a private cause of action to anyone . . . and certainly not TSP." Western National relies upon SDCL 58-33-69, which states that "[n]othing in §§ 58-33-66 to 58-33-69, inclusive, grants a private right of action." But SDCL 58-33-46.1 allows "[a]ny person who claims to have been damaged by any act or practice declared to be unlawful by [chapter 58-33] . . . to bring a civil action for the recovery of all actual and consequential damages suffered as a result of such act or practice including reasonable attorneys' fees to be set by the court." In other words, while SDCL 58-

33-67(1) does not by its own terms grant a private right of action according to SDCL 58-33-69, a violation thereof provides a cause of action under SDCL 58-33-46.1.

[¶24.] In its answer to the amended complaint, TSP asserted that it "is entitled to an award of attorneys' fees pursuant to SDCL 58-33-46.1" for Western National's violations of SDCL 58-33-67. The circuit court's factual findings that Western National violated SDCL 58-33-67(1) twice by failing to respond to BHI's communications within thirty days are not clearly erroneous. *See Brooks v. Milbank Ins. Co.*, 2000 S.D. 16, ¶ 16, 605 N.W.2d 173, 178. Further, under SDCL 58-33-46.1, TSP was a "person . . . damaged by" Western National's violation of SDCL 58-33-67(1).[6] Thus, regardless of whether there was coverage, TSP was entitled to bring a claim for reasonable attorneys' fees.

[¶25.] Although the circuit court held a hearing on attorneys' fees and awarded TSP $19,800.18, it is unclear what portion of the fees were properly assessed because the court did not delineate between fees awarded under SDCL 58-33-46.1 and SDCL 58-12-3. Further complicating the matter, the parties have not included the transcript of the October 19, 2015 attorneys' fees hearing in the record. Thus, we remand for the court to hold a hearing to determine what portion, if any, of the fees awarded to TSP occurred as a result of Western National's violations of SDCL 58-33-67(1) and to award the same.

## Conclusion

[¶26.] The Designated Professional Services endorsement excludes all potential coverage for any property damage caused by the land-surveying error.

---

6. The definition of *person* under SDCL 2-14-2 includes a corporation.

Accordingly, the circuit court erred by granting TSP's motion for summary judgment.  We remand for entry of summary judgment in favor of Western National.  Further, the circuit court erred in awarding attorneys' fees pursuant to SDCL 58-12-3.  We vacate the award of attorneys' fees and remand to the circuit court for further hearing on this issue consistent with this opinion.

[¶27.] GILBERTSON, Chief Justice, and ZINTER and SEVERSON, Justices, and WILBUR, Retired Justice, concur.

[¶28.] JENSEN, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.