2004 VT 75

## Barbara J. ADAMS v. GREEN MOUNTAIN RAILROAD COMPANY

[862 A.2d 233]

No. 03-026

¶ 1. August 18, 2004. Defendant Green Mountain Railroad Company appeals from a jury verdict in favor of plaintiff Barbara Adams on her claim that defendant violated public policy by firing her for reporting that a supervisor had grabbed her arm during a verbal confrontation. We conclude that the superior court erred by not granting defendant's motion for judgment as a matter of law because plaintiff failed to sustain her burden of proving that defendant fired her for the reason she alleged rather than for the reasons asserted by the company. Accordingly, we vacate the jury's verdict and remand the matter for the court to enter judgment in favor of defendant.

¶ 2. In reviewing the denial of a motion for judgment as a matter of law, we view the evidence in a light most favorable to the nonmoving party, and we exclude the effects of any modifying evidence. *Gero v. J.W.J. Realty*, 171 Vt. 57, 59, 757 A.2d 475, 476 (2000). Defendant hired plaintiff in 1988 to manage its passenger department. Except for the first six months of 2000 when she shared those duties with another employee, plaintiff held that position until she was fired in October 2000. She was not hired under a written contract and performed her job through the years as an at-will employee. Defendant came under new ownership in 1997. Plaintiff had problems adjusting to the new ownership, and she was involved in conflicts with several other employees, including Brent Brewer, who was two levels of command above her in the company. On Thursday morning, October 5, 2000, an employee of defendant asked Brewer to move his car so that a tourist bus could pull up into the spot. Suspecting that plaintiff had told the employee to ask him to move the car, Brewer came into plaintiff's office and asked her why it was necessary to do so. After complaining that buses normally do not park in the spot where he had parked, Brewer moved the car. As he was heading back to his office, plaintiff tried to get his attention to point out a sign for bus parking. An argument ensued, and Brewer asked plaintiff to move the discussion away from passengers and other members of the public. When the subject of the argument switched from parking to plaintiff's job performance, plaintiff announced that she had had enough and turned to leave. According to plaintiff, Brewer grabbed her arm just below her shoulder to turn her around and continue the discussion. Plaintiff told Brewer not to ever touch her again, and left for her office, where she called her immediate supervisor, Douglas Lamoureux, to report her confrontation with Brewer. Brewer also reported the incident.

¶ 3. On instructions from the company president, David Wulfson, Lamoureux told both plaintiff and Brewer to go home for the day. The following day, Friday, October 6, Wulfson had a long-term employee, Charles Bischoff, conduct an investigation of the incident. Bischoff took

statements from each of the principals to the incident, and had them review and sign the statements. He then reported to Wulfson, who concluded that, although Brewer had acted improperly in touching plaintiff, plaintiff had been the catalyst in this latest confrontation between the two. Wulfson gave Brewer a written warning. On Monday, October 9, he met with plaintiff and told her that her services were no longer needed. He offered her a $10,000 severance check if she would sign a confidentiality agreement and a release in which she agreed not to sue the company. She indicated that she wanted to think it over. In the end, plaintiff neither accepted the check nor signed the documents.

¶ 4. In June 2001, plaintiff filed a two-count complaint against defendant, alleging age discrimination and wrongful discharge in violation of public policy. Eventually, plaintiff withdrew her claim of age discrimination, and defendant moved for summary judgment with respect to the wrongful discharge claim. The superior court denied the motion, ruling that (1) public policy is implicated when an employer discharges an employee for complaining about physical abuse by a supervisor; and (2) viewing the evidence most favorably to plaintiff, a jury could infer from the timing of the termination that defendant fired plaintiff in retaliation for complaining that her supervisor had grabbed her. Following a three-day jury trial in October 2002, the jury awarded plaintiff $42,350 based upon its determination that defendant fired her solely or primarily because she reported that her supervisor had touched her. The superior court denied defendant's renewed motion for judgment as a matter of law, and this appeal ensued. On appeal, defendant argues that (1) the trial court erred in determining that plaintiff had engaged in an activity protected by public policy; (2) plaintiff failed to establish a causal nexus between her termination

and the alleged protected activity; and (3) on the evidence presented at trial, no reasonable jury could have concluded that defendant fired plaintiff solely or primarily because she reported the October 5 incident to her supervisor.

¶ 5. In Vermont, at-will employees such as plaintiff "may be discharged at any time with or without cause, 'unless there is a *clear and compelling* public policy against the reason advanced for the discharge.'" *Payne v. Rozendaal*, 147 Vt. 488, 491, 520 A.2d 586, 588 (1986) (quoting *Jones v. Keogh*, 137 Vt. 562, 564, 409 A.2d 581, 582 (1979)). In *Payne* we rejected the notion "that the public policy exception to at will employment contracts must be legislatively defined." *Id.* at 493, 520 A.2d at 589. Rather, we defined public policy as "'the community common sense and common conscience, extended and applied throughout the state to matters of public morals, public health, public safety, public welfare, and the like,'" and we indicated that when an employer's course of conduct with regard to an at-will employee "'is cruel or shocking to the average [person's] conception of justice,'" such conduct must be considered contrary to public policy even if the policy is not explicitly set forth in our written laws. *Id.* at 492-93, 520 A.2d at 588 (quoting *Pittsburgh, Cincinnati, Chicago & St. Louis Ry. v. Kinney*, 115 N.E. 505, 507 (Ohio 1916)). We held in *Payne* that firing an employee solely on the basis of age violated public policy. *Id.* at 494, 520 A.2d at 590. In later cases, however, we held that employers were entitled to judgment as a matter of law on claims alleging that the employer violated public policy (1) by firing an employee for refusing to sign a potentially unenforceable noncompetition agreement, *Madden v. Omega Optical, Inc.*, 165 Vt. 306, 313-14, 683 A.2d 386, 391 (1996), and (2) by firing an employee for administering medication in a manner that the employee thought was proper

but that violated the employer's policy, *Dulude v. Fletcher Allen Health Care, Inc.*, 174 Vt. 74, 82, 807 A.2d 390, 397 (2002).

¶ 6. In this case, the trial court struggled with the issue of whether the jury should be allowed to decide if the underlying physical contact by Brewer was significant enough to implicate public policy,* but ultimately concluded, as a matter of law, that firing an employee for reporting any unconsented touching warranted instructing the jury on a claim of retaliatory discharge in violation of public policy. Moreover, the court denied defendant's motions for directed verdict and judgment as a matter of law, ruling that the jury could find for plaintiff based on evidence that (1) Brewer touched plaintiff without her consent; (2) she reported the incident; and (3) she was fired a mere four days after reporting the incident. According to the court, evidence of plaintiff's contributions to the company countered other evidence of employment-related problems she had had, and evidence concerning the manner in which defendant investigated her complaint was consistent with her argument that the reasons advanced for her termination were merely a pretext.

---

* At trial, plaintiff testified that Brewer grabbed her just below the shoulder and forcefully turned her around, and that she was fearful because she did not know what he was going to do next. In her contemporaneous report of the incident, however, she told the company investigator that Brewer grabbed her arm lightly just to turn her, and that one of his fingers got caught up in the fold of her shirt. For his part, Brewer acknowledged that he should never have touched plaintiff, but claimed that he merely touched her on the shoulder to get her attention.

¶ 7. The court instructed the jury that plaintiff was entitled to judgment on her claim of retaliatory discharge in violation of public policy if she proved by a preponderance of the evidence that (1) she was engaged in an activity protected by public policy; (2) defendant knew of the protected activity; (3) defendant fired her; and (4) the sole or principal reason for her discharge was that she had engaged in the protected activity. Cf. *Robertson v. Mylan Labs., Inc.*, 2004 VT 15, ¶ 42, 176 Vt. 356, 848 A.2d 310 (setting forth elements for establishing prima facie case of wrongful retaliatory discharge). As to the first element, the court charged the jury that reporting an unconsented touching by a supervisor is, as a matter of law, a legally protected activity. Because there was no dispute that defendant knew plaintiff had reported the unconsented touching and that defendant had fired plaintiff, the only real question for the jury was whether plaintiff had proved that defendant's proffered reasons for her discharge were a pretext, and that instead she had been fired for engaging in a protected activity. Accordingly, the jury's special verdict form asked the jurors to determine whether defendant fired plaintiff solely or primarily because she reported that her supervisor had touched her, or solely or primarily for the business reasons stated by the company. The form instructed the jury to enter judgment for plaintiff if it found the former.

¶ 8. Because we conclude that the evidence, even when viewed most favorably from plaintiff's perspective, does not support the jury's conclusion that defendant fired plaintiff solely or primarily because she *reported* that her supervisor had grabbed her, we need not address defendant's argument that the facts of this case did not warrant a jury instruction on plaintiff's claim of wrongful discharge in violation of public policy. The causation element of plaintiff's cause of action re-

quired plaintiff to prove by a preponderance of the evidence that she was fired for conduct linked to the violation of public policy, and not for some other reason. 2 H. Perritt, Employee Dismissal Law and Practice § 7.21, at 54 (4th ed. 1998). When, as here, the employer meets its burden of proffering a legitimate reason for the dismissal, "the employee may win only by showing that the proffered reason was a pretext." *Id.* § 7.22, at 58; see *Robertson*, 2004 VT 15, ¶ 42 ("If the defendant carries this burden of production, the plaintiff must then demonstrate that the defendant's reasons are pretext for retaliatory discrimination.").

¶ 9. Plaintiff's principal basis for claiming that defendant fired her for reporting the unwanted touching rather than for insubordination, as the company claimed, was the timing of the discharge — just four days after the incident occurred and was reported to her supervisor. "An employer's unlawful motive may be inferred from the circumstances where no direct evidence of the employer's intent exists in the record." *Rosenberg v. Vermont State Colleges*, 2004 VT 42, ¶ 11, 176 Vt. 641, 852 A.2d 599 (mem.). Nevertheless, when a plaintiff relies on the timing of an adverse employment decision to show improper motive, the record must support an inference that the timing is suspect. *Id.* ¶ 12. There must be some evidence other than chronology that gives the factfinder reason to believe that the timing is an indication of improper motive. See *id.*; see also *Teachout v. Forest City Cmty. Sch. Dist.*, 584 N.W.2d 296, 302 (Iowa 1998) (mere fact that adverse employment decision occurred after protected activity is not, standing alone, sufficient to support finding that decision was in retaliation for engaging in protected activity). For example, in *In re McCort*, 162 Vt. 481, 495, 650 A.2d 504, 512-13 (1994), the adverse employment decision came one day after the employ-

ee's protected activity *and* lacked a reasonable, nonretaliatory basis. In another case, the suspicious timing of the adverse employment decision was supported by evidence that the plaintiff's supervisor had expressed anger and frustration over the plaintiff's decision to apply for workers' compensation benefits, and that other employees of defendant's had tried to persuade the plaintiff to drop his appeal of the initial denial of his benefits. See *Murray v. St. Michael's College*, 164 Vt. 205, 211, 667 A.2d 294, 299 (1995).

¶ 10. Here, plaintiff presented virtually no evidence linking her termination to her *reporting* the confrontation with Brewer. Indeed, she testified on cross-examination that the timing of her termination was the only factor she could think of suggesting that defendant was retaliating for her having reported the incident. She was unable to demonstrate how the timing of her termination was suspicious, however, given that the incident and the reporting of the incident occurred on the same day. The evidence was undisputed that plaintiff had been in several conflicts with persons whom she perceived were encroaching on her authority. Plaintiff had received a written warning in February 2000 concerning her job performance, had been sent home for three days in May 2000 after she refused to do something for another employee, was warned in June 2000 before she resumed control of the passenger department that she had two strikes against her and had only one more chance to make things work, was reprimanded again in September 2000 for not following up on a group reservation, and finally was fired on October 9, four days after engaging in a heated argument with her supervisor in public. Given this evidence, plaintiff's termination four days after the incident occurred is consistent with defendant's claim of insubordination. Cf. *Robertson*, 2004 VT 15, ¶ 35 (plaintiff's evidence was entirely consistent with employer's stat-

ed reason for employment decision and did not raise inference of pretext).

¶ 11. Other than her assertion about timing, at trial plaintiff attacked defendant's proffered reasons for firing her by trying to show that her prior insubordinate conduct was insubstantial and the prior warnings were unwarranted. The evidence was undisputed, however, that the incidents did occur, and that plaintiff was warned and reprimanded — before she reported her confrontation with Brewer. The warnings and reprimands could not have been a pretext for terminating plaintiff for reporting an incident that had not yet occurred. Further, plaintiff's evidence challenging the significance of her prior conduct and defendant's prior warnings could not overcome defendant's claim, which was supported by the evidence, that plaintiff was fired for engaging in a public confrontation with a company employee after having received prior warnings. Absent an explicit or implied contractual provision limiting the employer's right to discharge, neither the trial court nor the jury is entitled to usurp the role of the employer by determining the weight to be given to the various incidents that preceded plaintiff's termination. See *id.* (courts may not act as super-personnel departments second-guessing employer's nondiscriminatory business decisions, regardless of their wisdom).

¶ 12. In short, plaintiff was left with the possible inference that, but for her reporting an unwanted touching, the company would not have fired her because it had endured a number of other past incidents involving her without firing her. In this case, however, the inference was too weak to support the jury's verdict that she was fired primarily for reporting the incident, as opposed to being fired for the incident itself. Indeed, plaintiff has not suggested either at trial or on appeal any motive the employer might have had to fire her for

reporting the October 5 incident to her supervisor. By all accounts, the company responded immediately to plaintiff's internal report of the incident. Further, the relatively minor physical contact between Brewer and plaintiff made it highly unlikely that defendant would suffer negative repercussions in the event that the conduct was reported outside the company.

¶ 13. Plaintiff contends on appeal, however, that other evidence suggests she was fired for reporting her confrontation with Brewer. For example, she argues that her employer's improper motive could be inferred from the fact that Wulfson offered her a $10,000 severance check if she would sign a general release precluding her from suing the company. Wulfson testified that because plaintiff had worked for the company for twelve years, he wanted to give her enough severance pay to allow her time to find another job. He also stated that requiring employees to sign general releases in situations like this was standard procedure. The evidence was undisputed that plaintiff had threatened Brewer with a sexual harassment suit and had told Lamoureux that if the company was going to get rid of her, she would bring them all down. It is hardly surprising that, in an employment termination situation such as this, the employer would seek to protect itself as a matter of course, notwithstanding its actual liability, and further would offer the employee severance pay as consideration for signing the release. A reasonable factfinder could not view the company's conduct as an admission of wrongdoing in the context of this case.

¶ 14. Plaintiff also makes much of the fact that Brewer faxed documents concerning her performance problems to company headquarters between the date of the incident and the date she was fired. Apparently, she is suggesting that defendant trumped up the performance

problems after the fact to bolster its claim that she was fired for reasons having to do with job performance. As noted, however, the evidence was undisputed that plaintiff had job performance problems and that she received warnings and reprimands as the result of those problems. Hence, defendant's interest in documenting and summarizing plaintiff's past performance problems does not demonstrate that Wulfson's stated reason for firing plaintiff — the October 5 incident was the last straw in a series of performance problems — was a pretext. If anything, it suggests the opposite — that the company wanted to review the previous incidents to determine the appropriate course of action.

¶ 15. Nor do we think that a reasonable factfinder could infer an improper motive, as plaintiff suggests, from the fact that defendant gave plaintiff a performance rating one year after she sued the company; or that plaintiff was allowed to take over the passenger department again only two weeks after she had been sent home for not cooperating with another employee. First, defendant's post hoc performance rating might be probative of pretext if there were no other evidence of performance problems, but that is not the case here. In view of the pre-existing personnel records, the belated performance evaluation is irrelevant. Second, plaintiff did not challenge defendant's explanation that it allowed her to take over the passenger department again because the person who had been doing the job did not want to work with her anymore, and defendant needed someone with experience to do the job as the high season started. The previous three-day suspension had been based on plaintiff's unwillingness to cooperate with a fellow employee, not with her inability to run the passenger department. In any event, the evidence demonstrated that at the time defendant gave plaintiff control over the department, she

was warned that this would be her last chance to make things work. Finally, we infer no unlawful motive from the fact that Wulfson did not call plaintiff directly after the October 5 incident and gave Brewer only a warning for his role in the incident.

¶ 16. In sum, although we must be extremely cautious about granting judgment as a matter of law when resolution of the dispositive issue requires a determination of someone's state of mind, see *Doe v. Forrest*, 2004 VT 37, ¶ 56, 176 Vt. 476, 853 A.2d 48, we conclude that, based on the evidence presented at trial, plaintiff failed to meet her burden of demonstrating that defendant fired her for reporting her confrontation with Brewer rather than for the reasons stated by the company.

*Reversed and remanded for the superior court to enter judgment for defendant.*