Worthen v. Gaulin, No. 1546-03CnC (Norton, J., Mar. 31, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT
Chittenden County, ss.:

SANDRA WORTHEN

v.

RANDALL GAULIN, NORTHEAST
HOSPITALITY GROUP, INC., and
JENNIFER A. HANDY

ENTRY

This matter concerns injuries that the plaintiff, Sandra Worthen, incurred because of the harassing behavior of an occupant at the hotel where she worked. Worthen has sued her employer, the hotel general manager, and the hotel owner as a result of these injuries, claiming violations of the Vermont Fair Employment Practices Act (FEPA), 21 V.S.A. §§ 495–496, and the Vermont Occupational Safety and Health Act, 21 V.S.A. §§ 221–232, as well as wrongful discharge,[1] negligent supervision, and intentional infliction of emotional distress. The general manager, Randall Gaulin, has filed a motion for judgment on the pleadings for all claims. The employer, Northeast Hospitality Group, Inc., has filed a motion for judgment on the pleadings for the wrongful discharge, negligent supervision, and intentional infliction of emotional distress claims.

---

[1] Worthen pleads this claim as "constructive discharge." Because there is no such cause of action, the court assumes she intended to plead "wrongful discharge," which is consistent with the facts set forth in her complaint.

On a motion for judgment on the pleadings, "'all well pleaded factual allegations in the nonmovant's pleadings and all reasonable inferences that can be drawn therefrom are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false.'" Thayer v. Herdt, 155 Vt. 448, 456 (1990) (quoting Bressler v. Keller, 139 Vt. 401, 403 (1981)). "Where a plaintiff's pleadings contain allegations that, if proved, would permit recovery, a defendant may not secure a judgment on the pleadings." Id. Accordingly, the following relevant facts are based solely on Worthen's complaint.

Worthen worked as a housekeeper at a Super 8 Motel from May 2003 to late September 2003. Her duties included cleaning rooms and replacing the linens and towels in the rooms she cleaned. Throughout her employment, Johnny Perkins was a guest at Super 8. Perkins engaged in numerous acts of harassment toward Worthen and other female employees at Super 8. Perkins would typically leave pornographic material displayed in his room and make sexual advances toward Worthen and other female employees. Worthen and others complained to their managers about this behavior, but management did nothing about it.

Beginning in August 2003, Perkins' unwelcome behavior intensified and eventually forced Worthen to quit her job. Perkins's behavior around this time included grabbing Worthen's hand and forcing her to touch his erect penis; leaving Worthen a business card and telling her that he wanted to "lick [her] all over;" grabbing her by the hands and stating, "Let me kiss you and touch you. . . . you don't know how bad I want you;" and attempting to kiss Worthen. After these incidents, Perkins would sometimes state that what he was doing was permissible because he was a good guest at the hotel.

When Worthen reported these incidents to her managers, they sometimes told her that she would have to tolerate Perkins's behavior because he was a valued customer. Worthen believed that she had no choice but to quit her job, which she did in late September. She subsequently filed this action.

The court first examines Worthen's FEPA claim against Gaulin. Gaulin argues that he is not liable under the Act because he is not an "employer." FEPA defines employer as

> any individual, organization, or governmental body including any
> partnership, association, trustee, estate, corporation, joint stock company,

insurance company, or legal representative, whether domestic or foreign, or the receiver, trustee in bankruptcy, trustee or successor thereof, and any common carrier by mail, motor, water, air or express company doing business in or operating within this state, <u>and any agent of such employer</u>, which has one or more individuals performing services for it within this state.

21 V.S.A. § 495d(1) (emphasis added). Worthen argues that the "agent" phrase provides that employees in a managerial position, such as Gaulin in this case, may be liable along with employers.

In interpreting FEPA, the court finds federal caselaw interpreting Title VII persuasive. See <u>Lavalley v. E.B. & A.C. Whiting Co.</u>, 166 Vt. 205, 210 (1997). Although Title VII also includes agents in its definition of "employer," 42 U.S.C. § 2000e(b), a majority of federal circuits have held that Title VII does not confer individual liability on employee-agents. See <u>Haynes v. Williams</u>, 88 F.3d 898, 899 & n.2 (10th Cir. 1996) (citing circuit court cases). Federal courts have acknowledged that the plain meaning of the "agent" language indicates that employee-agents would have individual liability, but various reasons of statutory construction and policy weigh against this literal interpretation. The Second Circuit Court of Appeals, for example, has noted that Title VII's remedial scheme provides reinstatement and backpay for aggrieved employees, and only employers, not their agents, can typically provide such remedies. <u>Tompka v. Seiler Corp.</u>, 66 F.3d 1295, 1314 (2d Cir. 1995), abrogated on other grounds by <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742 (1998). FEPA's remedies also include "restitution of wages or other benefits [and] reinstatement." 21 V.S.A. § 495b(b). Some employee-agents may be able to provide such remedies, but if courts were to permit an action against those agents, then courts would be forced to differentiate between those supervisors who can reinstate and provide backpay to aggrieved employees and those who cannot. <u>Tompka</u>, 66 F.3d at 1314–15. Title VII, like § 495d(1) of FEPA, makes no such distinction; it simply includes "agents" in its definition of employees.

Moreover, the <u>Tompka</u> Court noted, allowing individual liability for an employee-agent could give rise to the inequity of a supervisor bearing the brunt of Title VII liability when that supervisor was merely carrying out the employer's decisions, as in cases where the employer company declares bankruptcy or dissolves. <u>Id</u>. at 1315–16. The same inequity could occur in a FEPA case.

Furthermore, as this court has noted, the legislative history surrounding the "agent" phrase demonstrates an intent to hold supervisors individually liable only in cases where they partook in sexual harassment. The General Assembly added the language in 1993 to change the result reached in McHugh v. University of Vermont, 758 F. Supp. 945, 949 (D. Vt. 1991), aff'd, 966 F.2d 57 (2d Cir. 1992), where the U.S. District Court for the District of Vermont held that supervisors could not be individually liable for their sexual harassment activities. Paquette v. I.B.M., No. 993-98 CnC, Slip op. at 3–4 (Oct. 7, 1999) (Katz, J.). Thus, the legislative intent for this addition is

> to extend FEPA liability specifically to supervisors for sexual harassment violations. . . . Sexual harassment, as opposed to other FEPA violations, is a personal offense committed by individual employees at their own initiative and for their own personal gratification. . . . Other claims under FEPA, however, may more conceivably arise from the employer's directives.

Id. at 4.

The FEPA claim in this case does not address any sexual harassment violations by Gaulin himself. Rather, according to Worthen's complaint, Gaulin merely acted within his managerial authority by failing to take action to remedy the harassing behavior of Perkins, a third-party, and by allegedly retaliating against Worthen because of her sexual harassment complaints. Therefore he is not the type of agent that the General Assembly intended for individual liability when it included the "agent" phrase in its 1993 amendment.

Worthen argues that because Gaulin has an ownership interest in Northeast Hospitality, he is more than a mere agent. This argument is unavailing without more facts regarding Gaulin's alleged ownership interest. A factory line worker for a car manufacturer is not an employer merely because her benefits package includes stock options. Likewise, a mere ownership interest in the employer company does not make Gaulin an alter ego of the employer here. Worthen would have to show that Gaulin's ownership of and relationship to Northeast Hospitality was such that there was no difference between the two parties—something along the lines of an argument to pierce the corporate veil. See, e.g., Agway, Inc. v. Brooks, 173 Vt. 259, 262–64 (2001). Worthen's complaint does not support such an argument. Therefore, the court grants Gaulin's motion for judgment on the pleadings for the FEPA claim.

4

With respect to the OSHA claims, Gaulin makes the same argument that he is not an "employer" under the Act. 21 V.S.A. § 203. The court need not reach this issue, however, as the court lacks subject-matter jurisdiction to hear any of the OSHA claims. Because the legislature charged the Occupational Safety and Health Review Board to investigate employer sites and implement OSHA's policies, the court's jurisdiction with respect to OSHA complaints is limited. See, e.g., Travelers Indemnity Co. v. Wallis, 176 Vt. 167, 170–75 (2003) (holding that superior court did not have primary jurisdiction over declaratory judgment action seeking to challenge actions of Department Labor and Industry where Commissioner of Labor and Industry had primary jurisdiction over claim). Primary jurisdiction in superior court lies only in an action based on an employer's retaliation for an employee's complaint regarding OSHA violations. See 21 V.S.A. § 232. Otherwise, superior courts have only appellate jurisdiction to review decisions by the OSHA Review Board. See, e.g., 21 V.S.A. §§ 209, 227.

Here, Worthen's complaint alleges harm stemming from her employer's alleged OSHA violations. It does not allege retaliation as a result of her OSHA complaints. Therefore, the court lacks jurisdiction to hear this claim. The proper venue is the OSHA Review Board. See 21 V.S.A. § 206(f), (g).[2] Because the court lacks jurisdiction to hear this claim, it is dismissed.

---

[2] The court rejects any notion that OSHA provides an implied right of action in this case. Whether a statute confers an implied right of action is a question of legislative intent, with several factors demonstrating such intent. See Cort v. Ash, 422 U.S. 66, 78 (1975); Cronin v. State, 148 Vt. 252, 255 n.2 (1987). Here, although an employee like Worthen may be an intended beneficiary of OSHA, see 21 V.S.A. § 201(b) ("It is the policy of the state of Vermont that in their employment all persons shall be provided . . . with safe and healthful working conditions at their work place, and . . . no employee shall suffer diminished health, functional capacity or life expectancy as a result of his work experience."), OSHA's comprehensive enforcement scheme shows that the legislature did not intend to provide additional enforcement through private actions in court. See Cronin, 148 Vt. at 255. Moreover, an implied right of action would be contrary to OSHA's "General purpose," which is "to provide efficient implementation of the policy of the state [with regard to OSHA]." 21 V.S.A. § 202. Allowing employees to opt for alternative fora in which to litigate OSHA complaints would create less efficiency than simply following the statutory scheme and leaving implementation with the OSHA Review Board, which has appropriate expertise in workplace safety. The court also notes

5

Turning to Worthen's wrongful discharge claim, Gaulin and Northeast Hospitality both argue that this claim is subsumed by the FEPA and OSHA claims because it essentially restates a retaliation claim under both acts. The Vermont Supreme Court has held that wrongful discharge is a cause of action for employee dismissals that are contrary to public policy. Adams v. Green Mountain R.R. Co., 2004 VT 75, ¶ 5 (mem.). The public policy need not be from a statute. Id. Rather, it derives from "the community common sense and common conscience, extended and applied throughout the state to matters of public morals, public health, public safety, public welfare, and the like." Id. (internal quotes omitted).

The Court has noted in other contexts, however, that where a statute confers a remedy unknown at common law and prescribes a mode of enforcing this remedy, the statute preempts the common law remedy. Winney v. Ransom & Hastings, Inc., 149 Vt. 213, 214–15 (1988); see also Decker v. Vt. Educ. Television, Inc., 13 F. Supp. 2d 569, 573 (D. Vt. 1998) (holding that wrongful discharge claim based on disability discrimination is preempted by FEPA). The Court has raised, without deciding, the issue of whether FEPA has preempted common law causes of action for age discrimination. Payne v. Rozendaal, 147 Vt. 488, 494 n.* (1986).

Here, FEPA's comprehensive approach toward defining wrongful employment practices and providing remedies for such practices suggests that the legislature intended to preempt any preexisting common law claims. Accordingly, the court holds that Worthen may not cloak a FEPA retaliation claim as a wrongful discharge claim. The wrongful discharge claim with respect to sexual harassment discrimination is dismissed.

With respect to OSHA, the court is similarly persuaded that the legislature intended to preempt common law retaliation actions regarding workplace safety. OSHA explicitly preserves common law actions in some respects by providing that the Act does not "enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of employment." 21 V.S.A. § 222(2). But OSHA also provides a private right of action with broad relief

that federal courts have declined to infer a right of action from the federal OSHA statute. See, e.g., Donovan v. Occupational Safety & Health Review Comm'n, 713 F.2d 918, 926

6

for employees who believe they have been "discharged or otherwise discriminated against" because they filed an OSHA complaint or instituted an OSHA proceeding. 21 V.S.A. §§ 231–232. This statutory right of action provides for such relief as "reinstatement, triple wages, damages, costs and reasonable attorney's fees"—certainly far beyond relief available at common law through a wrongful discharge action. Id. § 232. Thus, OSHA evinces an intent to preempt common law retaliation claims. The preservation of common law claims in § 222(2) likely applies to workplace injuries, not abstract injuries akin to retaliation. Worthen's wrongful discharge claim with regard to her OSHA complaints is also dismissed.[3]

With respect to Worthen's negligent supervision claim, Gaulin and Northeast Hospitality again argue that this claim is subsumed by her wrongful discharge claim, as well as her OSHA and FEPA claims. To the extent that Worthen is attempting to impute liability onto Gaulin and Northeast Hospitality for their failure to prevent other employees from constructively discharging her in retaliation for her protected activities, the court agrees that the negligent supervision claim is duplicative and must be dismissed. See Haverly v. Kaytec, Inc., 169 Vt. 350, 357–58 (1999). Worthen, however, claims the negligence in this case is the defendants' (1) failure to control Perkins's behavior, which included instances of assault and battery and (2) failure to control other employees, who should have intervened on her behalf to prevent the assault and battery.

The alleged duty of Gaulin and Northeast Hospitality to control Perkins here is akin to a landowner's duty to protect others from third-party licensees on the land. A landowner has such a duty if (1) she knows or should know that she has the ability to control the third-party and (2) she knows or should know of the necessity and opportunity for exercising such control. Restatement (Second) of Torts § 318 (1965); see also Knight

---

(2d Cir. 1983). Such caselaw is persuasive here. Green Mountain Power Corp. v. Comm'r of Labor & Indus., 136 Vt. 15, 24–25 (1978).

[3] Worthen's OSHA claim did not include a claim for retaliation under 21 V.S.A. § 232. For this reason, the court dismissed the OSHA claim for lack of subject-matter jurisdiction. If Worthen wishes to include a § 232 retaliation claim under OSHA in light of the court's ruling that she cannot bring such a claim in a wrongful discharge action, the court will entertain a motion to amend her complaint to do so. The court may then need to consider, however, whether Gaulin could be individually liable under the OSHA statute—an issue the court does not decide at this time.

v. Rower, 170 Vt. 96, 103 (1999) (adopting § 318 standard). Such a tort action may also be characterized as "negligent supervision." See Restatement (Second) of Agency § 213(d) and cmt. I (1958).

Here, Worthen has presented a prima facie case of the defendants' liability based on § 318. With respect to Northeast Hospitality, Worthen has alleged that the employer should have known of the ability to control Perkins, given that he was a guest at the hotel and Northeast Hospitality could have revoked his license to stay there. Worthen has also alleged that Northeast Hospitality should have known of the necessity and opportunity for exercising such control given her many complaints of Perkins's behavior.

With respect to Gaulin, he stands as an agent of Northeast Hospitality in this case, and an agent is generally individually liable for his own torts, even if the torts occur at the direction of a principal. Restatement (Second) of Agency § 343. In this case, Gaulin was also allegedly a custodian of the property, as was Northeast Hospitality. Worthen therefore has pled sufficient facts to demonstrate that Gaulin is liable for undue risks of harm to Worthen on the property. Id. § 355.

Worthen's claim regarding the defendants' lack of control of other employees, however, is based on entirely different actions by those employees that the defendants supervised. The Restatement (Second) of Agency provides that in a negligent supervision claim, "[l]iability exists only if all the requirements of an action of tort for negligence exist." Id. § 213 cmt. a.

> Thus, the tort of negligent supervision must include as an element an underlying tort or wrongful act committed by the employee. A wrongful act may well be a tort, but not necessarily. If the act of the employee is contrary to a fundamental and well-defined public policy as evidenced by existing statutory law, it is sufficient to sustain the cause of action.

Haverly v. Kaytec, Inc., 169 Vt. 350, 357 (1999).

Here, Worthen claims that the employees failed to prevent Perkins's behavior. Northeast Hospitality and Gaulin are liable, Worthen argues, because they negligently failed to ensure that the employees would intervene. The employees' alleged lack of assistance, however, does not constitute tortious conduct or a sufficient wrongful act. Although Vermont law does impose a "duty to rescue," this duty is limited to instances of "grave physical harm." 12 V.S.A. § 519(a). Perkins's behavior may have been harassing

8

and scary, but Worthen has not shown that it subjected her to grave physical harm. Without an underlying tort or wrongful act, the defendants' negligent supervision, if any, is not actionable. The court therefore grants the defendants' motion for judgment on the pleadings to the extent that it imputes liability on them for the actions of other Super 8 employees.

Finally, the court turns to Worthen's intentional infliction of emotional distress (IIED) claim. Northeast Hospitality argues that Worthen's claim is either subsumed within her FEPA or OSHA claims or does not plead facts sufficient to demonstrate actions that are extreme or outrageous enough to constitute an IIED claim. Worthen's claim is not solely premised on Northeast Hospitality's FEPA and OSHA violations. Rather, Worthen claims that Northeast Hospitality's failure to take any action to protect her from Perkins's harassment constitutes IIED. FEPA and OSHA claims are limited to those in an employment relationship, whereas an IIED claim can extend more broadly to instances where one's outrageous behavior harms another. There is no suggestion that FEPA or OSHA preempted such claims.[4]

Nevertheless, Worthen still must make a prima facie case of IIED, which requires a showing of "extreme and outrageous conduct, done intentionally or with reckless disregard of the probability of causing emotional distress." Denton v. Chittenden Bank, 163 Vt. 62, 66 (1994). The Vermont Supreme Court has noted that in a workplace environment, employer actions such as excessive workload and verbal abuse do not arise to extreme and outrageous conduct except in rare circumstances. Fromson v. State, 2004 VT 29, ¶¶ 14–17; Denton, 163 Vt. at 67.

Taking Worthen's pleadings as true, the court holds that she has presented a prima facie case of IIED. See Thayer v. Herdt, 155 Vt. 448, 456 (1990). An employer's deliberate blind eye toward a guest's harassment may be outrageous and extreme, depending on the specific facts. Northeast Hospitality argues that no reasonable jury could find it liable for its mere nonfeasance, but that is an argument more appropriate after discovery, when the parties have gathered the facts they intend to present at trial. Worthen has pled facts sufficient to survive a motion for judgment on the pleadings.

---

[4] The preemption of wrongful discharge claims discussed above is a different matter. Wrongful discharge is essentially a common law remedy for certain employer activities, some of which FEPA and OSHA directly address. IIED is not limited to remedying employer activities.

Gaulin argues that because Worthen's complaint does not allege that she reported any of the harassing incidents to him personally, he cannot be liable for IIED. Worthen describes in detail, however, the many occasions that she reported the incident to other supervisors at the hotel. Whether Gaulin had actual knowledge of Perkins's behavior through these numerous reports is an open question. Worthen's numerous reports of the incidents provide enough of a basis to deny a motion for judgment on the pleadings for this claim.

## ORDER

For the foregoing reasons, the defendants' motion for judgment on the pleadings is GRANTED in part and DENIED in part, consistent with the above entry. Counts II and III of Worthen's complaint are DISMISSED.

Dated at Burlington, Vermont, March 31, 2005.

_____/s/_____
Judge