Parker v. Town of Brattleboro, No. 516-10-07 Wmcv (Wesley, J., Mar. 9, 2010)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT
WINDHAM COUNTY, SS

| | |
|---|---|
| TERRANCE PARKER<br> Plaintiff<br><br> v.<br><br> TOWN OF BRATTLEBORO<br> Defendant | SUPERIOR COURT<br> Docket No. 516-10-07 Wmcv |

OPINION & ORDER RE
MOTION FOR SUMMARY JUDGMENT

Plaintiff Terrance M. Parker has sued Defendant Town of Brattleboro ("the Town") for claims arising from Plaintiff's employment with the Brattleboro Police Department and his subsequent termination. Plaintiff brings claims of (1) retaliatory termination in violation of public policy; (2) disability discrimination and hostile work environment harassment; (3) wrongful discharge (breach of contract); (4) breach of covenant of good faith and fair dealing; and (5) intentional/reckless infliction of emotional distress. The Town moved for summary judgment (10/30/08) on all of Plaintiff's claims based on the Town's affirmative defenses of claim and issue preclusion.

By previous entries, the Court granted Defendant's motion to amend its answer to raise the defenses on which it now seeks summary judgment, (2/5/2008); denied Plaintiff's motion to strike the amended answer as filed out-of-time (1/5/2009); and initially denied the motion for summary judgment, based on the need for further clarification of the summary judgment record as regards the collective bargaining agreement (7/28/2009). Defendant supplemented the record with the pertinent provisions of the collective bargaining agreement (8/14/2009), and sought to renew its motion for summary judgment. Plaintiff has also supplemented its opposition to summary judgment (8/20/09).

For the reasons explained below, the Town's Motion for Summary Judgment is **GRANTED** as to Count 1 for retaliatory discharge, Count 3 for breach of contract and Count 4 for breach of the covenant of good faith and fair dealing, and **DENIED** as to Count 2 for employment discrimination based on disability. As discussed below, the Court reserves ruling on Count 5 for intentional infliction of emotional distress, pending further development of the summary judgment record.

**Factual Background -** Plaintiff was a patrolman with the Brattleboro Police Department. As a patrolman, Plaintiff's employment with the Town was governed by a Collective Bargaining Agreement ("CBA"). On February 8, 2007, the Assistant Town Manager, Barbara Sondag, provided Plaintiff with a letter informing him of the Town's decision to terminate his employment. In relevant part, the letter stated:

The reason for the dismissal being continued deficiencies in your reporting, failure to accurately record time worked on a timesheet, and twice leaving a firearm in an unsecured area . . . . As per Article 7 of the Union agreement a copy of the grievance article [Article 8] is attached to this letter.

Without specifying any context, the letter also rejects Plaintiff's allegation that "the Chief and Captain Rowell have a target on your back."

Article 8 of the CBA outlines a procedure for filing "grievances" with the Police Department. Under Articles 7 and 8 of the CBA, Plaintiff was permitted to grieve his dismissal in one of two ways: to proceed pursuant to the progressive grievance process described in Article 8, or to elect a hearing as provided by 24 V.S.A. § 1932. The grievance procedure specified in Article 8 of the CBA concludes with binding arbitration.[1] However, Plaintiff elected to proceed with the statutory public hearing before the Selectboard ("Board"), in lieu of binding arbitration.[2] On June 4, 2007, the Board conducted a

---

[1] "Should the answer at Step III prove not to be satisfactory, the Association may submit the grievance to Arbitration for final disposition and notify the Town Manager in writing, sighting (sic) the specific cause violated. The filing of the grievance would be made within thirty days from receipt of the Town Manager's answers. The Association would submit the grievance to the Federal Mediation and Conciliation Services, Arbitration Division. Upon receipt of the panel of names, the Association would strike three names and the Town would strike three names and the remaining name would be the arbitrator."

[2] In pertinent part, 24 V.S.A. § 1932, pertaining to suspension and discharge of police officers for neglecting their duties, provides:

(a) Whenever it appears to the appointing authority by its own knowledge or when informed by a written petition signed by one or more responsible persons that any regular officer has become negligent or derelict in his official duty, or is guilty of conduct unbecoming an officer, the appointing authority shall set a date for a hearing before the legislative body upon the complaint, and shall give at least seven and not more than 15 days written notice to the accused officer stating particularly the complainant, the charges against the officer and the time and place of hearing. The legislative body may suspend such officer from duty pending a hearing.
(b) The officer is entitled to be represented by counsel, to answer the complaint and to be heard on the charges. He may waive in writing his right to a hearing.
:::
(d) If the legislative body . . . finds after considering all the evidence offered in such hearing, that the officer is guilty of the charges as offered, the legislative body shall have the power by majority vote to remove said officer or to suspend him without pay for a period of time not to exceed 60 days.
(e) Any officer found not guilty of the charges offered against him by either the district court or the legislative body shall have restored to him pay lost through suspension.

2

hearing at which Plaintiff testified and was represented by counsel. At the hearing, the parties stipulated that the issue to be determined by the Board was as follows:

Whether just cause existed to terminate the employment of Terry Parker under Article 7 of the Collective Bargaining Agreement?

Following the hearing, the Board issued a written decision dated August 15, 2007, titled "FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER," ("Board's Findings and Order"), which made the following findings: that Plaintiff continually failed to adequately complete paperwork; that Plaintiff experienced problems reporting time on his timecards; that Plaintiff's job performance was inferior to other officers; that Plaintiff has been previously warned and reprimanded regarding his problems with completing written reports and making an accurate report of his time; that Plaintiff's post traumatic stress disorder ("PTSD") was not "a mitigating factor in [Plaintiff's] poor and failing performance in his written duties"; and that Plaintiff did not inform the Town of his PTSD. The Board did not rely on the charge that Plaintiff had left a firearm in an unsecured area, finding that the facts were insufficient to support this basis for termination, particularly as regards prior notice or warning. Nevertheless, since it found substantial evidence to support the remaining charges, the Board concluded that "just cause" existed for Plaintiff's termination.[3]

**Procedural Background -** On October 11, 2007, Plaintiff brought this five-count complaint against the Town, setting forth the following claims: (1) retaliatory termination in violation of public policy (arguing that Plaintiff was wrongfully fired as a result of a controversial and widely-publicized prior shooting incident, with death resulting, at which time Plaintiff was fulfilling his duty to ensure public safety, "an activity protected by public policy"); (2) disability discrimination and hostile work environment harassment (arguing that Plaintiff was diagnosed with post-traumatic stress disorder and depression as a result of the shooting incident; that Plaintiff is therefore now a handicapped individual; that the police department failed to make adequate accommodations for Plaintiff; that police department officials criticized Plaintiff for failing to complete paperwork, which was a result of his disability; and that Defendant "joined in the harassment when it upheld Plaintiff's termination"); (3) wrongful discharge in breach of an employment agreement (arguing that Plaintiff's collective bargaining contract required "just cause" for termination, which did not exist despite the Board's ruling); (4) breach of covenant of good faith and fair dealing (arguing that the covenant protects parties "against conduct

_____

[3] It is unclear from the summary judgment record whether a record was made of the proceedings before the Board. Assuming a record was kept, neither party has submitted a transcript.

characterized by 'bad faith'"; that "Defendant's use of insufficient documentation was a deliberate effort to remove Plaintiff from the police force"; "that Defendant deliberately subverted the contract's 'just cause' provision"; and that "[i]n essence, Defendant railroaded Plaintiff out of the police force despite the 'just cause' requirement and the covenant's 'good faith' rule"); and (5) intentional/reckless infliction of emotional distress (arguing that police department officials harassed Plaintiff about his failure to complete paperwork; that officials attempted "to conjure up evidence of misfeasance and/or incompetence against Plaintiff"; that the police department "failed to fully support Plaintiff in the aftermath of the shooting incident"; that the chief of police suspended Plaintiff on two occasions for insufficient paperwork while not suspending other officers for similar conduct; and that the police department brought other exaggerated or false claims against Plaintiff).

The Town now asserts that each of Plaintiff's claims is barred by claim and issue preclusion, since Plaintiff failed to properly appeal from the Board's ruling within the time specified by V.R.C.P.75 (c); 30 days from the issuance of the Board's findings on August 15, 2007. With regard to claim preclusion, the Town argues in its Motion for Summary Judgment (1) that Plaintiff's "retaliatory termination in violation of public policy" claim is barred because "[t]he Sondag Letter, which endorsed the then-Chief of Police's recommendation for termination (and which in essence prompted the Hearing), specifically referenced Plaintiff's view that he felt he was being 'targeted'"; (2) Plaintiff's "disability discrimination and hostile work environment harassment" claim is barred because it "is premised on [Plaintiff's] post traumatic stress disorder ("PTSD"). . . . [and] [t]hat diagnosis was expressly dealt with in the Hearing"; (3) that Plaintiff's "wrongful discharge (breach of contract)" claim is barred because Plaintiff "really just claims there was no 'just cause' for his termination[,] . . . [that] Plaintiff knew 'just cause' was the focus of the Hearing[,] . . . [and that] the Town knew the 'just cause' standard, applied it, and found it was met"; (4) that Plaintiff's "breach of covenant of good faith and fair dealing" claim is barred because "[t]o the extent that the Town's proper and cautious approach to Plaintiff's termination . . . were not indisputably 'good faith' and 'fair,' Plaintiff had ample opportunity at the Hearing to challenge the approach"; and (5) that Plaintiff's "intentional/reckless infliction of emotional distress" claim is barred because "[a]ll of the incidents, actions, inactions that Plaintiff premises the claim on (i.e.; the two suspensions, poor documentation, misrepresenting time) were (or should have been) litigated at the Hearing."

With regard to issue preclusion, the Town argues in its Motion for Summary Judgment as follows:

Plaintiff was a party to the Hearing. As shown above with regard to claim preclusion, the same issues raised in the Complaint and Jury Demand were raised at Hearing. The issues were resolved by the Town's Findings and Order, which without timely appeal, serves as a final judgment on the merits. There was a full and fair opportunity for Plaintiff to litigate all of the issues at the Hearing, and he did so, represented by counsel and testifying on his own behalf. Application of issue preclusion here will be nothing but fair. Not applying claim and/or issue preclusion here will subject the parties and the Court to re-litigation, discourage reliance on the processes called for by the CBA and 24 V.S.A. 1932, raise the specter of vexatious litigation and allow for the very real possibility of inconsistent adjudication.

**Discussion**

To seek the advantages of the protective provisions of an employment agreement, a plaintiff must process his claim according to the procedure outlined by the contract's terms. *Morton v. Essex Town Sch. Dist.*, 140 Vt. 345, 348 (1981). "[M]ost grievance and arbitration agreements are entered into for the precise purpose of providing an alternative to judicial remedies." *Id.* at 348-49.

Here, the crux of Plaintiff's breach of contract and breach of good faith and fair dealing claims is that the CBA was violated when Plaintiff was terminated without "just cause." Pursuant to the CBA, the avenues available to challenge that violation included: (1) the grievance process outlined in Article 8 of the CBA, or (2) a hearing before the Board pursuant to 24 V.S.A. § 1932. Plaintiff elected a hearing, at which the Board issued findings that "just cause" existed for his termination. Section 1932 contains no provision for an appeal, and thus the Board's decision was only reviewable pursuant to a Rule 75 petition for review of governmental action. V.R.C.P. 75(a) (providing for review of [a]ny [municipal] action . . . that is not reviewable or appealable under Rule 74 . . .). In *Hunt v. Village of Bristol*, 159 Vt. 439, 439 (1992), the Vermont Supreme Court acknowledged that under V.R.C.P. 75, judicial review in the nature of *certiorori* is available from determinations under 24 V.S.A. § 1932. However, on remand from the original dismissal for failure to state a claim, the Court noted, "[s]ince certiorari review is ordinarily restricted to the record, the case may be decided expeditiously on submission of memoranda of law." *Id.* at 442.

In this case, Plaintiff's complaint makes no reference to Rule 75.[4] Rather, it is styled as framing causes of action arising from the same nexus of facts which were the subject of the administrative proceedings, as though Plaintiff were entitled to *de novo* review with respect to each of his grievances with the Town. In particular, alleging pretext and unfair consideration by the Board, Plaintiff purports to state jury claims as to the very question which was before the Board during the evidentiary proceedings pursuant to the CBA – whether there was just cause for the Town's termination of Plaintiff's employment as a police officer. This is plainly not the law. See *Hunt*, 159 Vt. at 439-40; see also *Morton*, 140 Vt. at 348.

As to issues falling within the scope of those properly subject to the parties' collective bargaining agreement, Plaintiff may not relitigate them in this case. This conclusion follows from straightforward contract interpretation. *Id.* It is plain from the terms of the CBA that the parties elected a grievance procedure providing, through the choice of either option, for a process that contemplated finality without resort to further *de novo* judicial review. Had Plaintiff elected the administrative steps encompassed by Art. 8, the determination by an arbitrator would have been beyond any further review. See 21 V.S.A. § 1734 (a)(2) (authorizing binding arbitration of grievances involving the interpretation or application of a written collective bargaining agreement). Likewise, because Plaintiff chose to challenge his termination pursuant to 24 V.S.A..§ 1932, and because determinations by that administrative process are only reviewable under Rule 75, Plaintiff cannot now seek the advantages of the protective provisions of the CBA, while ignoring its dispute resolution terms by filing an independent action for wrongful discharge and breach of good faith and fair dealing.

As Defendant insists, application of fundamental principles of *res judicata* amply demonstrates that any issue properly within the scope of the CBA grievance procedures is now beyond further review by Plaintiff's claims for breach of contract and breach of good faith. Whether viewed through the lens of claim preclusion, or issue preclusion, the result is inescapable. Claim preclusion "provides that a valid and final judgment in favor of one party bars another action by the other party on the same claim." *Delozier v. State*, 160 Vt. 426, 429 (1993). It bars not only issues actually litigated but also those which should have been raised in previous litigation. *Berlin Convalescent Ctr. v. Stoneman*, 159 Vt. 53, 56

---

[4] Indeed, as the Town maintains, if filed as a Rule 75 appeal, Plaintiff's complaint would have been untimely. V.R.C.P. 75(c) provides that such appeals must be filed with 30 days, unless otherwise provided by law. Since there is no statutory specification for appeals from determinations under 24 V.S.A.§ 1932, Rule 75 both limits the scope of such appeals to *certiori* review for abuse of discretion based on the administrative record, and governs the time for filing. Absent good cause for an extension, which Plaintiff neither sought nor suggests any grounds to establish, any right to Rule 75 review had already lapsed before Plaintiff filed this complaint.

(1992). While claim preclusion "does not apply to administrative proceedings as an inflexible rule of law," *In re Carrier*, 155 Vt. 152, 157 (1990), the doctrine will control "when an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." *Delozier*, 160 Vt. at 429. The elements necessary for such proceedings to have preclusive effect include "adequate notice to interested parties, the right of parties to present evidence and legal argument, final judgment, and procedural elements necessary to afford fair determination of the matter in light of the magnitude and complexity of the matter." *Id.*

Issue preclusion is similar in effect to claim preclusion, but narrower in scope. *Sheehan v. Dep't of Employment and Training*, 169 Vt. 304, 308 (1999). Issue preclusion bars re-litigation of factual or legal issues "actually litigated by the parties in a prior case, and applies when: (1) it is asserted against one who was a party in the prior action; (2) the same issue was raised in the prior action; (3) the issue was resolved by a final judgment on the merits; (4) there was a full and fair opportunity to litigate the issue in the prior action; and (5) its application is fair." *In re Stormwater NPDES Petition*, 2006 VT 91, ¶ 23, 180 Vt. 261. Issue preclusion may be applicable to administrative hearings when the above standards are satisfied. *Id.* The party seeking preclusion "has the burden of introducing a sufficient record of the prior proceeding to enable the trial court to pinpoint the exact issues previously litigated." *State v. Pollander*, 167 Vt. 301, 305 (1997) (internal quotations omitted). Further, to establish that an issue was "finally resolved," the party seeking preclusion must show that the relevant issue was necessary to the earlier decision, not that the issue *could* have been the basis of the prior decision. *Id.*

As elaborated above, the CBA was explicitly designed to delineate and limit the procedures for adjudicating grievances, including whether just cause existed as to employment termination. Either prong of the grievance procedures was designed to yield a decision based on due process; the presentation of evidence, representation by counsel, and a decision based on findings of fact and conclusions of law. Plaintiff is in a poor position to challenge the adequacy of the CBA here, particularly since he foreswore the alternative election of binding arbitration, in which each party had balanced control over the designation of a neutral factfinder. By the option he chose, however, Plaintiff not only was entitled to a full due process evidentiary hearing before the Board, but he also preserved the right to Rule 75 review, a further procedure prior to finality not available had he elected binding arbitration. That he abandoned his opportunity to seek a review of the record, as limited by Rule 75 and the CBA, represents a deliberate strategy. However, Plaintiff has failed to demonstrate that such review is unfair, or plainly inadequate to the claims of arbitrary treatment he seeks to raise *de novo.* Rather, the

7

Court concludes that Plaintiff is bound by the contract remedies specified by the terms of the CBA, and they provided him with a full and fair opportunity to challenge the Town's justification for the termination of his employment. Just cause has been established as a matter of *res judicata.*

While Counts 3 and 4 of the complaint, for breach of contract and good faith, quite clearly must be dismissed, Defendant's attack on the remainder of the complaint is not so obviously destined to prevail. Counts 1, 2 and 5 – for retaliatory discharge in violation of public policy, for discrimination and harassment based on disability, and for intentional infliction of emotional distress – require proof of legal elements beyond the scope of the matter presented to the Board, which was limited to whether "just cause" existed for firing Plaintiff. Yet, Defendant insists that all of the evidence and factual determinations necessary to the other three counts of Plaintiff's complaint necessarily were addressed, or could have been addressed, in the hearing before the Board. The Town further argues that the determination of "just cause," now binding as a matter of *res judicata,* is completely inconsistent with Plaintiff's claims for retaliatory firing, discrimination due to disability, or intentional infliction of emotional distress. Although the Court concurs that Plaintiff's ability to establish the elements of Count 1 are precluded by the Board's findings and conclusions, Counts 2 and 5 present issues that were not within the scope of the Board's proper determination, and cannot be extinguished solely on account of its ruling.

Vermont recognizes a cause of action for wrongful discharge from employment based on public policy, in which a remedy is implied to redress such a discharge, even if the employment relationship was terminable at will, because the basis for the firing "is cruel or shocking to the average [person's] conception of justice." *Payne v. Rozendaal*, 147 Vt. 488, 492-93 (1986) (firing employee based solely on age violated public policy); but see *Adams v. Green Mtn. R.R.*, 177 Vt. 521 (2004) (reversing plaintiff's verdict based on claim of retaliatory firing in response to complaint that supervisor inappropriately touched her, because no reasonable jury could have concluded employer's justification of insubordination after warning was pretextual); *Madden v. Omega Optical, Inc*., 165 Vt. 306, 313-14 (1996) (public policy not implicated by firing an employee for refusing to sign a potentially unenforceable noncompetition agreement); *Dulude v. Fletcher Allen Health Care, Inc*., 174 Vt. 74, 82 (2002) (public policy not implicated by firing an employee for administering medication in a manner that the employee thought was proper but that violated the employer's policy).

In this case, Plaintiff has provided no authority for the proposition that, even assuming the Town's motive in firing him centered on the controversy after the shooting, such a claimed failure to

support the goal of public safety could be grounds for relief based on "public policy." See *Madden*, 165 Vt. at 313-14; *Dulude*, 174 Vt. at 82. More importantly, none of the Vermont Supreme Court cases discussing a possible claim of wrongful discharge against public policy arose in the context of a collective bargaining agreement. Rather, the doctrine has evolved as an exception to an employer's right at common law to terminate employment "at will." See *Jones v. Keogh*, 137 Vt. 562 (1979). Here, on the other hand, Plaintiff's right to retain employment was protected by the CBA unless the Town demonstrated "just cause," and was upheld in the chosen grievance proceeding.

The question of whether the Town's actual reason for firing Plaintiff differed from the reason specified in the letter of termination, including whether such real motivation undermined public policy, is inextricably bound together with the determination of "just cause." There is neither suggestion nor evidence that Plaintiff was precluded from raising before the Board issues involving the earlier shooting. Indeed, it is plain that the Board did consider aspects of Plaintiff's complaints regarding the shooting. While omitting any detailed discussion of its reasoning, the Board squarely discounts the suggestion of any causal link between Plaintiff's claimed PTSD and the poor performance which justified termination, stating Plaintiff's supervisors "allowed Grievant extra latitude around the anniversary of the Woodward shooting." Thus, Plaintiff either presented his claim for retaliatory firing, or had the opportunity to present it, when he grieved his termination under the CBA. His case was unpersuasive, and he did not challenge the adequacy of the Board's findings and conclusions under V.R.C..P. 75, the only avenue for review contractually available.

After *Adams,* it is extremely doubtful that Plaintiff could have sustained his burden of proof for wrongful discharge against public policy, even if his challenge had arisen from a termination at will. *Adams*, 177 Vt. at 525 ("neither the trial court nor the jury is entitled to usurp the role of the employer by determining the weight to be given to the various incidents that preceded plaintiff's termination"). Yet, regardless of the potential strength of any possible evidence for retaliatory or pretextual firing, Plaintiff is barred from relitigating it by the terms of the collective bargaining agreement, and the principles of *res judicata* and issue preclusion.

Plaintiff's claim for "disability discrimination and hostile work environment harassment" is subject to a different rubric. The complaint asserts that Plaintiff was diagnosed with post-traumatic stress disorder and depression as a result of the shooting; that Plaintiff is therefore now a handicapped individual pursuant to the Vermont Fair Employment Practices Act; that the police department failed to make adequate accommodations for Plaintiff; that police department officials criticized Plaintiff for

9

failing to complete paperwork, which was a result of his disability; and that Defendant "joined in the harassment when it upheld Plaintiff's termination." The Town argues that Plaintiff's discrimination claim is premised on Plaintiff's PTSD, and that "that diagnosis was expressly dealt with in the hearing." The Board found that Plaintiff did not notify the Town of Plaintiff's PTSD, and that Plaintiff's PTSD did not contribute to Plaintiff's unacceptable paperwork.

As noted above, Plaintiff frames his disability discrimination claim as coming under the Vermont Fair Employment Practices Act. The United States Supreme Court has refused to give preclusive effect to an arbitrator's previous decision in a subsequent lawsuit asserting statutory rights. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 59-60 (1974) (finding that a plaintiff may pursue a statutory cause of action for employment discrimination in spite of previous adverse decision in an arbitration proceeding brought pursuant to a collective bargaining agreement). The *Alexander* Court distinguished the rights concerning the interpretation of a collective bargaining agreement and the statutory right to be free from discrimination, as follows:

> In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights afforded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums.

*Id.* at 49-50; see also *Blanchette v. Sch. Comm. of Westwood*, 692 N.E.2d 21, 25 (Mass. 1998) (submitting state statutory retaliation claim to arbitration under a collective bargaining agreement did not give preclusive effect to the arbitrator's decision in a subsequent court action).

As there is no meaningful distinction between an agreement to arbitrate a CBA dispute, and an agreement to submit a CBA dispute to a municipal board, preclusion does not appear appropriate on Plaintiff's discrimination claim. Thus, despite the Board's consideration of Plaintiff's PTSD claim related to the shooting, and despite its factual findings disclaiming any nexus between Plaintiff's asserted handicaps and the lack of adequate performance, the separate statutory origin of Plaintiff's claim for discrimination guarantees him the right to present it for determination by a jury. Indeed, it is likely that, under *Alexander*, even had the parties attempted to encompass such discrimination disputes as explicitly within the scope of matters subject to grievance under a collective bargaining agreement, such terms would be found unenforceable if challenged. Relying on the reasoning of *Alexander* and *Blanchette,* therefore, Defendant's motion to dismiss Count 2 must be denied.

Analytically, Plaintiff's claim for "intentional/reckless infliction of emotional distress" falls on a spectrum between the principles just discussed as determinative of the claim for retaliatory discharge, and the claim for discrimination based on disability. By this final claim, Plaintiff asserts that police department officials harassed Plaintiff about his failure to complete paperwork; that officials attempted "to conjure up evidence of misfeasance and/or incompetence against Plaintiff"; that the police department "failed to fully support Plaintiff in the aftermath of the shooting incident"; that the chief of police suspended Plaintiff on two occasions for insufficient paperwork while not suspending other officers for similar conduct; and that the police department brought other exaggerated or false charges against Plaintiff. Again, Defendant insists that this count merely reframes the same dispute regarding "just cause" for termination which was conclusively determined by the Board. Concluding that it is a close issue on the law, the Court is not persuaded that, based on its *res judicata* argument, the Town is entitled to dismissal of the count for intentional infliction of emotional distress.

To sustain a claim for intentional infliction of emotional distress, a plaintiff must show that defendants engaged in "outrageous conduct, done intentionally or with reckless disregard of the probability of causing emotional distress, resulting in the suffering of extreme emotional distress, actually or proximately caused by the outrageous conduct." *Sheltra v. Smith*, 136 Vt. 472, 476 (1978). Considering these elements, Defendant's insistence is understandable that a fair reading of the Board's findings can't be squared with Plaintiff's burden to show "outrageous conduct"; put differently, had the Board discerned such an unwarranted pattern of harassment by Plaintiff's superiors, it could not have upheld his firing as justifiable. Yet, while certainly Plaintiff pegged one thrust of his denial of "just cause" on the claim that he was being harassed as a result of his role in the shooting, the elements of the tort are not in such inextricable alignment with the "just cause" grievance that the Court can consider them concluded as a matter of law by the CBA procedures. See *Johnson v. Beatrice Foods Co.*, 921 F.2d 1015, 1021 (10th Cir. 1990) (refusing to hold that IIED claim preempted by procedures under Federal Labor Relations Act); see also *Connelly v. Yale Univ.*, No. CV044001928S, 2008 WL 4633888, at *3 (Conn. Super. Ct. Sept. 24, 2008) (collecting cases).

Nevertheless, the temptation to rely on claim preclusion to dismiss the emotional distress claim gains impetus from the Vermont Supreme Court's recent ruling in *Fromson v. State,* 176 Vt. 395 (2004), upholding summary judgment for the employer in a case in which the allegations of employment-related harassment were quite similar to those advanced here. In *Fromson*, an employee of the corrections department brought a tort action against the State for intentional infliction of emotional distress,

11

claiming that the sanctions for poor performance imposed against him were all part of a pattern of unfair harassment designed to make him resign. Sustaining the trial court's dismissal on summary judgment, the Supreme Court ruled:

> Because laws proscribing conduct must be specific enough to give fair notice of what conduct will give rise to liability, we decline, on these facts, to extend liability to a series of indignities. Absent at least one incident of behavior that transcends the ignoble and vast realm of unpleasant and often stressful conduct in the workplace, incidents that are in themselves insignificant should not be consolidated to arrive at the conclusion that the overall conduct was outrageous.

*Id.* at 399-400.

On the current record, the Court is hard put to distinguish the circumstances and holding in *Fromson* in assessing the adequacy of Plaintiff's evidence here. Yet, the Court must acknowledge that Defendant relies for its summary judgment argument only on the proposition that the IIED claim is barred by *res judicata*; rather than the argument that there are no facts to support the IIED claim even if it was not precluded by the CBA proceedings. Nevertheless, in consideration of the preceding discussion, and because it believes that the matter is potentially ripe for summary judgment on alternative grounds, the Court reserves ruling on the motion for summary judgment as to Count 5 pending further development of the summary judgment record, as provided in the order below.

**WHEREFORE** it is hereby **ORDERED:**

Defendant's motion for summary judgment as to Counts 1, 3 and 4 of Plaintiff's complaint is **GRANTED,** and those counts are **DISMISSED WITH PREJUDICE.** The motion to dismiss Count 2 is **DENIED.** A ruling on the motion for summary judgment as to Count 5 is **DEFERRED**, pending further development of the summary judgment record as follows: Defendant may supplement the summary judgment record and pleadings consistently with this opinion until March 26, 2010. Plaintiff may supplement the summary judgment record and pleadings consistently with this opinion until April 5, 2010.

Dated at Newfane this _____ day of March, 2010.

_____
John P. Wesley
Superior Court Judge

12